Paul **HETTINGER** d/b/a Modern Glass Co. et al., Plaintiffs,

v.

**GLASS SPECIALTY CO., INC.**, et al., Defendants.

No. 71 C 1671.

United States District Court, N. D. Illinois.

April 13, 1973.

Burditt & Calkins, Ken J. Denzel, Chicago, Ill., for plaintiffs.

Kent Lawrence, Lawrence, Goldberg, Lawrence & Lewin, Chicago, Ill., Miller, Canfield, Paddox & Stone, Detroit, Mich., Robert A. Sternberg, Maurice P. Raizes, Chicago, Ill., Thomson, Thomson, Bloomington, Ill., for State Farm Mutual Auto & General Ins. Co.

Robert R. Berendt, Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., for State Farm Fire.

Earl E. Pollock, Kenneth H. Hoch, Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., for Allstate Ins. Co., Nat. Emblem Ins. Co.

Roy S. Kullby, Paul Freehling, Timothy Klenk, Pope, Ballard, Kennedy, Shepard & Fowle, Chicago, Ill., for Royal Industries, Inc.

.Philip F. Johnson, Steven P. Handler, Don H. Reuben, Michael W. Coffield and Thomas F. Ging, Chicago, Ill., Merker & Adler, Bloomington, Ill., for Chicago Motor Club, Mid America Ins. & Car Service, Inc. and Country Mut. Ins. Co.

Paul Homer, Joseph A. Spitalli and Josef D. Cooper, Chicago, Ill., for Guardian Industries Corp.

William C. MacLean, Chicago, Ill., for Northwest Glass & Trim Service, Inc.

Walter L. Montgomery, Chicago, Ill., for M and M Glass Service.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the plaintiffs' motion that the instant case be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

This is an anti-trust action based on alleged violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and Section 2 of the Clayton Act (15 U.S.C. § 13). Jurisdiction of this Court is based on Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26). The plaintiffs seek to recover damages and to obtain injunctive relief for alleged injuries to the business and property of the named plaintiffs and members of the class they represent.

The present lawsuit is a consolidation of two cases, General Glass Co., Inc., et al. v. Globe Glass and Trim Co., et al., 71 C 921, filed on April 16, 1971, and Hettinger, et al. v. Glass Specialty Company, Inc., et al., 71 C 1671, filed on August 5, 1971.

The instant action involves a claim by several named Illinois glass repair shops that certain insurance companies, as part of their individual auto glass claim procedures, have each separately entered into agreements with a number of different glass shops and that these alleged

agreements have restrained competition in the glass repair business.[1]

The named plaintiffs are ten glass repair companies, six of which are in Cook County, Illinois, and four in downstate Illinois.[2] The plaintiffs bring the instant action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

The defendants are insurance companies, glass repair shops, and several individuals. Those insurance companies named as defendants are: State Farm Mutual Automobile Insurance Company and its subsidiaries, State Farm General Insurance Company and State Farm Fire & Casualty Company (hereinafter jointly referred to as "State Farm"); Allstate Insurance Company and its wholly-owned subsidiary, National Emblem Insurance Company (hereinafter jointly referred to as "Allstate"); Country Mutual Insurance Company and its two wholly-owned subsidiaries, Country Casualty Insurance Company and Mid-America Fire & Marine Insurance Company (hereinafter jointly referred to as "Country Companies"); and the Inter-Insurance Exchange of the Chicago Motor Club (hereinafter "Chicago Motor Club"). The glass repair shops named as defendants are: Globe Glass & Trim Service; Glass Specialty Co.; Northwest Glass & Trim Service, Inc.; M & M Glass Service, Inc.; Car Service, Inc., a wholly-owned subsidiary of the Chicago Motor Club which performs body repair work for Motor Club insureds. The named individual defendants are Joseph Kellman, owner and chief executive officer of Globe Glass, and Sol Shor, its executive vice-president.

The amended complaint alleges that the defendant insurance companies have each separately entered into agreements with different defendant glass repair shops to refer and send all or nearly all of their automobile glass repair business to those shops.[3]

More specifically, plaintiffs allege that each defendant insurance company carries out its glass repair claim procedures in each different locality by means of various illegal combinations[4] and that each insurance company, acting separately, refers and sends to the defendant, co-conspirator glass repair shops all or nearly all of its automobile glass replacement business.[5]

Plaintiff further alleges in all counts that the defendant glass repair shops vi-

1. It should be noted, however, that no allegation is made of any agreement or conspiracy among the insurance company defendants.

2. The named plaintiffs are: Paul Hettinger d/b/a Modern Glass Co., principal place of business in Watseka, Illinois; Lawrence P. Maye d/b/a Arrow Glass Company, principal place of business in Bradley, Ill.; Jack W. Glascock d/b/a Valley Glass Co., principal place of business in Kankakee, Illinois; Joseph N. Berz d/b/a Kankakee Glass Company, principal place of business in Kankakee, Illinois; General Glass Co., principal place of business in Chicago, Illinois; Airport Glass and Mirror Co., principal place of business in Chicago, Illinois; George's Glass and Key Service, Inc., principal place of business in Chicago, Illinois; Irving Z. Lazar and Kiva Halperin, partners d/b/a Apex Glass Co., principal place of business in Chicago, Illinois; La Grange Glass Co., principal place of business in La Grange, Illinois; Auto Glass, Plate, Mirror Co., principal place of business in Chicago, Illinois.

3. Defendants Joseph Kellman and Sol Shor are also named as parties to the alleged agreement in all three counts.

4. Plaintiffs allege that each insurance company and its subsidiaries or affiliated companies combined with its independent insurance agents, independent body shops and its insured to restrain trade (Count I, Paragraphs 27(b), (d), and (f); Count II, Paragraphs 3(b), (d), and (f)). In addition, Chicago Motor Club allegedly combined with its wholly-owned subsidiary, Car Service, Inc. (Count I, Paragraph 27(f)).

5. Count I, Paragraphs 27(a)-(f); Count II, Paragraphs 26(a)-(f); Count III, Paragraphs 13(a)-(f).

olated Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), by charging the defendant insurance companies less for automobile glass replacement than the shops were charging other customers and that the defendant insurance companies have violated Section 2(f) of the Robinson-Patman Act, 15 U.S.C. § 13(f), by inducing such discrimination.[6]

Plaintiffs also claim in the first two counts of the complaint that as a result of the alleged agreements and other activities, Globe Glass has obtained a monopoly position in Cook County and the State of Illinois and that Glass Specialty has obtained a monopoly position in portions of Central Illinois and Western In-

6. Count I, Paragraphs 27(a), (c), (i), (j); Count II, Paragraphs 26(a), (c), (i), (k); Count III, Paragraphs 13(a), (c), (e), (g).

7. Count I, Paragraph 27(a); Count II, Paragraph 26(g), (i).

8. Originally, Count I was a separate suit involving Cook County alone and captioned General Glass Company, et al. v. Globe Glass & Trim Company, et al. Count II was filed later as a separate suit captioned Paul Hettinger, et al. v. Glass Specialty, et al., involving claims in Illinois, Indiana, Missouri and Wisconsin. These two cases were consolidated on October 19, 1971. Plaintiffs added III as a nationwide class action in their consolidated amended complaint.

9. Count II cites as a class all glass repair shops in Illinois, Indiana, Wisconsin, and Missouri (Count II, Paragraph 7). However, the substantive allegations of that count are confined to the State of Illinois and plaintiffs' brief limits the alleged Count II class to Illinois glass repair shops. It appears to this Court that the language regarding the four-state class does not accurately reflect the intention of the plaintiffs.

10. In support of their claims, the plaintiffs allege the following illegal separate agreements whereby the named defendant insurance companies refer and send all or nearly all of their automobile glass repair business to specified glass repair shops:

*1. State Farm.* The Count I plaintiffs, six glass repair shops located in Chicago and suburban areas, allege that State

diana, all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.[7]

Plaintiffs bring this action for treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15. They also seek injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26.

The amended complaint contains three counts. The main difference between the counts of the amended complaint is the geographic scope of the alleged violations and consequently the size of the proposed plaintiff classes.

Count I alleges a class of all glass repair shops in Cook County;[8] Count II alleges a class of all glass repair shops in Illinois;[9] and Count III alleges a nationwide class.[10]

Farm entered into agreements in Cook County in 1964 or 1965 with Globe Glass, M & M Glass, and other unknown glass repair shops (Count I, Paragraph 27(a)).

The Count II plaintiffs, four glass repair shops located in Kankakee and surrounding towns, allege agreements between State Farm and Globe Glass Specialty and nine co-conspirators in Illinois in 1970 (Count II, Paragraph 26(c)).

All ten named plaintiffs allege in Count III that State Farm in 1969 or 1970 entered into an unspecified number of agreements with all the named defendant glass repair shops, and unnamed co-conspirators in "designated areas throughout the United States" (Count III, Paragraph 13(a)). None of the "designated areas" are identified.

*2. Allstate.* The plaintiffs allege that Allstate entered into similar, but separate, agreements in 1969 with: (1) Globe Glass, M & M Glass, and Northwest Glass in the Chicago area (Count I, Paragraph 27(c)); (2) Globe Glass and Specialty, and a different group of co-conspirators in Illinois (Count II, Paragraph 26(c)); and (3) all the named glass repair shop defendants and unnamed co-conspirators in "designated areas throughout the United States" (Count III, Paragraph 13(d)).

*3. Country Companies.* The plaintiffs in Count II alleged that Country Companies entered into agreements in 1969 with Globe Glass and Specialty (Count II, Paragraph 26(e)). The Count III allegations against Country Companies are the same as those against State Farm.

The named plaintiffs in support of their motion that the instant case be maintained as a class action, contend that all the requirements of Rule 23 of the Federal Rules of Civil Procedure have been satisfied and that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

The defendants in opposition to the instant motion contend that the plaintiffs fail to satisfy all the requirements of Rule 23(a) and that the alleged class actions are not superior to other methods of adjudication.

In deciding whether this action can be maintained as a class action it is essential to consider the nature of the plaintiffs' auto glass repair business as revealed by pre-trial discovery. Plaintiffs are engaged in a variety of types of glass repair and related activities, including commercial glazing, home glass repair, and automobile glass installation.[11] Automobile glass repair represents a relatively minor part of the business of many plaintiffs.[12] Plaintiffs assert that they serve relatively limited geographic areas within their respective business communities. In most cases plaintiffs draw the bulk of their business from a two-to-five mile radius of their shops.[13] There are indications that competition among plaintiffs and other glass repair business has been substantial and is continuing.[14]

The prices charged by glass repair shops are not uniform, and some of the named plaintiffs seem to have been slower than other glass repair shops in lowering their prices.[15]

The variety and quality of service varies widely among Illinois glass repair shops. Numerous defendant glass re-

---

4. *Chicago Motor Club.* Chicago Motor Club is only named as a defendant in Count I, which alleges an agreement between Chicago Motor Club and Globe Glass in Cook County in 1970 (Count I, Paragraph 27(e)).

11. Count I, Paragraphs 3–8; Count I Interrogatory Answer 9(e); Count II Interrogatory Answer 8.

12. For example, auto glass repair was never more than 25% of Modern Glass' business (Hettinger Deposition p. 209), approximately 5–7% of Kankakee Glass' business (Berz Deposition, p. 169), and 10% of General Glass' Business (Maye Deposition, p. 21; Maye Interrogatory Answer 11).

13. See Jalloway Deposition pp. 92–93; Zachelmayer Deposition, pp. 117–118; Mudaro Deposition p. 502; Curtiss Deposition, p. 12; Maye Interrogatory Answer 18.

14. According to Frank Mudaro, owner of plaintiff ·General Glass Company, competition has forced the steady reduction of windshield prices and labor charges in the Chicago area. In 1952, the prevailing price for windshields was a 30% discount from the National Automobile Glass specifications ("NAGS") list price (Mudaro Deposition, pp. 841–842). Windshield prices are commonly stated in the industry as the discount off the list price published by NAGS. In 1960, the discount increased to 40%. A 50% discount was started for State Farm, body shops and automobile dealers in the middle 1960's (Mudaro Deposition, pp. 841–842, 968); for Allstate in 1969 (Mudaro Deposition, pp. 969–70, 1017); and for other customers, including Chicago Motor Club in the latter part of 1970 (Mudaro Deposition, pp. 863, 972). The charge for labor has undergone a similar drop from $5.00–$5.50/hour to a flat rate of $10.00–$12.50 per windshield (Mudaro Deposition, pp. 765, 303).

15. General Glass Company only began giving State Farm and Allstate 50% discounts after losing much of their business to other glass shops (Mudaro Deposition, pp. 971–72). The plaintiff Auto Glass, Plate, Mirror Company still charges 95% of its customers at a 40% discount and a $5.00 or $6.00/hour labor rate (Jalloway Deposition, pp. 317, 460–61), and plaintiff La Grange Glass Company charges Chicago Motor Club a labor rate of $5.50/hour (Curtiss Deposition, pp. 552–53). At the same time as early as 1964 numerous glass repair shops offered Country Companies a 50% discount, a $10.00–$12.50 flat rate labor charge, and no charge for clean-up time (Country Companies Answer to plaintiffs' first request for documents No. 12).

pair shops operate mobile units which provide glass repair wherever the car is located, while few of the plaintiffs provide this valuable service.[16]

Solicitation of business is another area in which the named plaintiffs differ greatly. Although some of the Count I plaintiffs claim to have regularly solicited insurance company business, practically all others admit that they make no personal calls on insurance agents or companies.[17]

Plaintiffs' gross sales figures have all increased since 1964 without major expenditures for new equipment, averaging more than 50% greater than 1964 sales.[18]

## I. REQUIREMENTS FOR THE MAINTENANCE OF A CLASS ACTION.

In order for a class action to be the proper mechanism for adjudicating a controversy, the following requirements of Rule 23(a) must all be satisfied:

1. The class must be so numerous that joinder of all members would be impracticable.

2. There must be questions of law or fact common to the class.

3. The claims or defenses of the representative parties must be typical of the claims or defenses of the class.

4. The representative parties must fairly and adequately protect the interests of the class.

In addition, one of the provisions of Rule 23(b) must be satisfied. The parties have agreed that the purported class of plaintiffs must meet the requirements of Rule 23(b)(3), which provides:

The court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum: (D) the difficulties likely to be encountered in the management of a class action.

It is the opinion of this Court that the purported classes of plaintiffs do not meet the prerequisites of Rule 23.

---

16. See Country Companies First Interrogatory Answer 79; Glascock Deposition, pp. 296–97; Hettinger Deposition, p. 48; Mudaro Deposition, pp. 96–98; Curtiss Deposition, pp. 29–30; Jalloway Deposition, pp. 264–65; Zachelmayer Deposition, pp. 338–40; Lazar Deposition, p. 33; Janczyk Deposition, p. 144. Four plaintiffs provide no mobile service whatsoever (Berz Deposition, p. 20; Jalloway Deposition, p. 13; Zachelmayer Deposition, p. 21; Janczyk Deposition, p. 260). However, certain plaintiffs who discourage mobile service will occasionally provide it in absolute emergencies (see Glascock Deposition, pp. 93–97; Hettinger Deposition, pp. 79–82; Maye Deposition, pp. 24–25).

17. See Curtiss Deposition, pp. 394–98; Mudaro Deposition, pp. 135–7 (Compare to Jalloway Deposition, pp. 342–43; Janczyk Deposition, pp. 132, 157–58; Lazar Deposition, pp. 129–35–37). Hettinger Deposition, p. 116; Berz Deposition, p. 175 and Maye Deposition, pp. 16–17, 49, 68, 118, 140.

18. Count I Interrogatory Answer 9(F) of General Glass, George's Glass, La Grange Glass, Airport Glass; Berz Deposition, pp. 170, 158; Glascock Deposition, pp. 118, 314–15; Hettinger Deposition, pp. 22, 31, 307–8; Maye Deposition, pp. 21–22.

## II. THE PURPORTED PLAINTIFF CLASSES FAIL TO MEET THE REQUIREMENTS OF RULE 23(b)(3).

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." In the instant case there are numerous issues which can only be decided on an individual basis:

### A. Whether a Plaintiff Provides Equivalent Prices and Services.

The plaintiffs alleged as a key issue in these purported class actions the insurance companies refusal to deal with plaintiffs and other members of the Illinois class even though they offer to do the same work on the same terms and at the same prices as provided by the pre-selected defendant shops.[19] This necessitates a threshold determination of whether the members of the alleged class are able and willing to provide goods and services of the same quality and at the same prices as the alleged pre-selected shops and whether offers to that effect have been communicated to the defendant insurances companies. This determination can only be made on an individual basis. As was noted earlier, pre-trial discovery reveals that the named plaintiffs themselves differ greatly in pricing, mobile service, service capacity, and the solicitation of defendants' business.

### B. Whether a Plaintiff Class Will Necessitate a Plethora of Mini Trials to Determine Individual Agreements and Geographic Markets.

The complaint has generally alleged agreements to monopolize and illegally restrain the competition for geographic markets consisting of Cook County, Illinois, the State of Illinois, and the United States.[20] As noted above, the nature of the glass repair business and the manner of the insurance companies' operation demonstrates that it will not be possible to make broad, area wide determinations as to the existence of each alleged conspiracy and the participation therein of the alleged conspirators. As noted before, most glass repair shops operate in a relatively limited geographic area, namely a two-to-five mile radius. Most of the defendant insurance companies operate on a de-centralized basis. For example, glass claims of State Farm insured are handled by 25 State Farm regions and 70 divisions. Each region and many of the divisions are alleged to have their

19. The named plaintiffs contend that the individual questions of what each plaintiff offered by way of price and service to get on the preselected glass shop list is secondary to the fact that the programs of the respective insurance companies themselves barred them from any participation whatever. The plaintiffs' analysis of this problem is imprecise. A crucial question in any anti-trust action similar to the instant action is whether any of the named plaintiffs were ever capable of performing the desired services for the expected price. If a plaintiff was not capable of providing the desired service (e. g., many named plaintiffs cannot provide mobile service) it is quite doubtful that the anti-trust action can be successful as to him. See Federal Trade Commission v. Borden, 383 U.S. 637, 86 S.Ct. 1092, 16 L.Ed.2d 153 (1966).

20. More specifically, plaintiffs complaint sets forth numerous different alleged agreements (Count I and Count II of the complaint) : Chicago area and Illinois agreements involving State Farm; other agreements involving Allstate; still other Chicago area agreements involving the Chicago Motor Club; and Illinois agreements involving the Country Companies. The alleged insurance company— glass shops conspiracies are different in each case. When the alleged Count III conspiracies in unidentified "designated areas throughout the United States" are added to the conspiracies alleged in Counts I and II of the complaint, the number of different alleged conspiracies could easily reach the hundreds.

own separate procedures for handling glass claims. Local claims personnel are also alleged to have wide discretion in the handling of glass claims for insureds of the Chicago Motor Club and Country Companies. Allstate does have a company-wide program, but it too has left the implementation to its regional offices.

In order to determine whether the alleged conspiracies existed and to identify the alleged conspirators, it will be necessary to examine the local glass claim policies and practices of the numerous "regions" or "divisions" of each insurance company defendant, many of which overlap, and then determine the relationship of each such "region" or "division" with different glass shops in a large number of localities. A plaintiff can raise the possibility of being damaged only if such a conspiracy is established in its specific locale. This determination would have to be repeated for every small geographic area in which alleged class members operate. Further, the local conditions and effects of defendants' alleged activities are likely to vary greatly from geographic market to geographic market. Thus, it will be necessary to determine whether the separate activities of each defendant insurance company and glass repair shop have restrained competition in each of numerous small geographic areas throughout the United States.

### C. Whether a Plaintiff Can Demonstrate Actual Coercion on the Part of Insurance Companies.

■ It is clear in anti-trust cases such as the instant action that a plaintiff must demonstrate actual coercion on the part of the insurance companies in order to establish anti-trust liability. Mere recommendations to or persuasion of insureds are insufficient. Lah v. Shell Oil Co., 50 F.R.D. 198 (S.D.Ohio 1970).[21] Coercion, if it exists, can only be shown by demonstrating that individual insureds were prevented from having their cars repaired at individual glass repair shops. Again such a determination, given the nature of the glass repair business and the small geographic market, has to be made on the individual glass shop level and cannot be broadly asserted to establish liability to the entire class.

### D. Whether a Plaintiff Was In Fact Damaged and The Amount of Such Damage.

In a treble damage action, the finding of an anti-trust violation does not result in liability. The statute creates a remedy only to the extent that each person has been "injured in his business or property by reason of anything forbidden in the antitrust laws." Clayton Act, § 4, 15 U.S.C. § 15. It is this injury which constitutes the crux of any plain-

---

21. In Lah v. Shell Oil Co., 50 F.R.D. 198 (S.D.Ohio 1970), a class action was denied in circumstances quite similar to the present case. Just as plaintiffs' instant action claims that the defendants coerced their insured into having their cars repaired at glass repair shops they otherwise would not have chosen, Mr. Lah, Shell Service Station operator, claimed that Shell had used its "dominant" position to "coerce" him and other service station owners into buying unwanted products. In denying plaintiff's request to represent a class of 140 Shell dealers in a five-county area of Ohio, the court held that plaintiff's allegations of coercion were inappropriate for class treatment:

> [I]n between the relation of dominance and liability is a question of fact—persuasion v. coercion. As applied to 140 dealers, there are 140 questions of fact. Our conclusion is therefore that the overall predominating questions presented by the plaintiff's claim are questions of fact and while the same questions of fact exist with respect to the claims of any other member of the class, a conclusion as to one member is not common or determinative, or even relevant when the questions arise with respect to another member.

tiff's cause of action. *See, e. g.*, Beegle v. Thomson, 138 F.3d 875 (7th Cir. 1943), cert. denied, 322 U.S. 743, 64 S. Ct. 1143, 88 L.Ed. 1576; Burnham Chemical Co. v. Borax Consolidated, 170 F.2d 569 (9th Cir. 1948), cert. denied, 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086 (1949). The determination of the fact of damage can only be determined on an individual basis. Many of the named plaintiffs never did much or any business with certain insurance company defendants, either before or after the alleged agreements purportedly went into effect. On the other hand, as was noted earlier, some plaintiffs have continued to do business with defendant insurance companies even after the alleged agreements purportedly went into effect.[22] A class determination of the fact of damage would be impossible. The difference in prices and services and the keen competition for business among the glass repair shops mandates that any determination of damages in the instant action must be done on the individual basis.[23] Further, determining the amount of damages involves the extremely difficult task of determining how much business, if any, each glass repair shop would have obtained from the defendant insurance companies absent the purported agreements and other alleged activities less any amount of business actually received.[24]

■ The key words of Rule 23 are "fair and efficient adjudication." The entire rationale for permitting class actions under Rule 23(b)(3) is to "achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Advisory Committee's Note, Proposed Amendments to Rules of Civil Procedure, 39 F.R.D. 69, 102–103 (1969). Class actions lose their attractiveness in cases wherein individual questions are seen to have such scope or variety as to overload the action.

■ It is the opinion of this Court that the instant putative class action involves a number of factual and legal issues which can only be determined on an individual basis and this would necessitate a plethora of mini trials. As a practical matter the capacities of even the best judges and jurors to absorb the factual situation presented are finite and the capacity of a courthouse does not begin to reach that of a coliseum. A class action in the instant case would stretch the facilities and abilities of this Court beyond their elastic limit.

22. One named plaintiff, General Glass, does more than $25,000 worth of business per year with *Allstate* (See *Mudaro Deposition*, pp. 779–780). Other named plaintiff shops do as much or more business with some of the insurance company defendants than they did in prior years (See Count I Interrogatory Answer 33 of George's Glass, Apex Glass and La Grange Glass).

23. Further, the defendants contend that this difficulty in determining damages is compounded by the question of whether the alleged activities of the defendants actually caused any injury to each class member. This problem arises because automobile glass repair represents only a small part of many of the named plaintiffs' businesses, and the gross sales of all named plaintiffs have increased substantially in recent years.

24. The named plaintiffs contend that courts have uniformly held that the individual issue of damages "does not justify dismissal of the class action" citing Eisen v. Carlisle & Jacqueline, 391 F.2d 555 at 566 (2nd Cir. 1968). The full citation of the sentence relied on by the plaintiffs clearly shows the plaintiffs' mistake. As the court stated, "all of these differences among the class members bear only on the computation of damages, a factor which, by itself, does not justify dismissal of the class action." The *Eisen* case is clearly distinguishable from the instant action in that the instant case involves essential differences among the class members as to whether an individual plaintiff suffered damages and thus has a cause of action against the defendant.

Given the large number of individual questions of law and fact,[25] the ability of the named plaintiffs to carry forth the litigation on their own, and the problems of manageability, a class action is not superior to other methods of adjudicating the instant action.[26]

Federal courts have followed the clear intent of Rule 23 in denying class actions in anti-trust cases similar to the instant action wherein there were a predominance of individual questions of law and fact, a need for threshold investigations into individual business relationships to determine liability, and numerous defenses available against individual class members.[27]

Any one of the above reasons is sufficient in and of itself to indicate the failure of the plaintiff class to meet the requirements of Rule 23(b)(3). The combined effect of the above factors makes it abundantly clear that the plaintiff class fails to meet the necessary requirements of Rule 23(b)(3). Thus, a class action is not appropriate because there are questions of law and fact affecting only individual members of the class which predominate over questions common to the members of the class and because a class action is not superior to other available methods for fair and efficient adjudication of the controversy.

## III. IT IS DOUBTFUL THAT THE PLAINTIFF CLASS HAS MET ALL THE REQUIREMENTS OF RULE 23(a).

The failure of the plaintiff class to meet the necessary requirements of Rule 23(b)(3) is fatal to the maintenance of a class in the instant action. Thus it is not necessary for this Court to decide whether the plaintiffs meet all the requirements of Rule 23(a). This Court in passing will merely state those fac-

25. The McCarran Act exempts the business of insurance from the operation of the anti-trust laws to the extent that such business is regulated by state law. See 15 U.S.C. §§ 1011–12. The defendants contend that the proposed national class action would raise the prospect of up to 50 determinations of the legal questions as to whether the activities of the insurance companies with respect to handling glass claims are within the exemption. This court need not presently decide the merits of the defendants' alleged defense or whether any state statute would exempt the alleged anti-trust violation.

26. A class action is not superior method of adjudicating the instant action for the following reasons: First, there is a predominance of individual questions of law and fact. Second, since the anti-trust laws permit the recovery of treble damages and reasonable attorney's fees, a denial of a class action will not prevent the litigation of a violation by individual members of the proposed class who may be as yet unnamed. See Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y.1972); Rogers v. Coburn Finance Corp. of De Kalb, 54 F.R.D. 417 (N.D.Ga.1972). Third, there are serious problems of manageability of a case in which there is the probability of a plethora of mini trials.

27. See City and County of Denver v. American Oil Co., 5 CCH Trade Reg. Rptr., Paragraph 73,783 (D.Colo.1971) (class of 126 governmental agencies denied in price-fixing case because court would have to determine whether "passing-on" defense was available against each individual class member); Caceres v. International Air Transport Assn., 46 F.R.D. 89 (S.D.N.Y.1969) (class of travel agencies denied in refusal-to-deal case, because court would have to examine termination notice given to each agency); William Goldman Theatres, Inc. v. Paramount Film Distributing Corp., 49 F.R.D. 35 (E.D.Pa.1969) (nationwide class of motion picture theatres in anti-trust suit against movie distributors denied, because distribution policies differed from city to city and from theatre to theatre); Reinisch v. New York Stock Exchange, 52 F.R.D. 561 (S.D.N.Y.1971) (class of twenty million investors denied in price-fixing case, because court would have to examine individual business relationships between brokerage firms and customers). See also Lah v. Shell Oil Co., supra, Gaines v. Budget Rent-A-Car Corp. of America, 5 CCH Trade Reg.Rptr., Paragraph 73,860 (N.D.Ill.1972); Winokur v. Bell Federal Savings and Loan Association, 58 F.R.D. 178 (N.D.Ill.1972).

tors which cast serious doubt on whether the plaintiff could have met these requirements.

■ First, an essential prerequisite to a class action is the existence of a "class" whose bounds are precisely drawn. Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968); Philadelphia Electric Company v. Anaconda American Brass Company, 43 F.R.D. 452 (E.D.Pa. 1968).

An examination of the instant case reveals the problem of a wide-ranging, undefined class which may be too amorphous to be regarded as a class. A class which includes every shop performing auto glass replacement is not automatically co-extensive with the potential claimants defined by the allegation of the complaint. The plaintiff class is alleged to consist of shops ranging from those which are primarily engaged in automobile glass repair to every installer of automobile glass no matter how miniscule its auto glass business is. However, there is no conceivable way to identify the shops which may have experienced alleged decreases in glass repair business since plaintiffs presumably have no information as to whether other glass repair shops have lost business from the defendant insurance companies. In short, the number of potential class members may be as limited as the named plaintiffs themselves, or as numerous as all shops which do auto glass repair.

■ Second, the adequacy of the named plaintiffs' representation depends upon whether the interests of the representative parties are co-extensive with the interests of the class and upon whether the representative parties and their attorney can be expected to prosecute the action vigorously and to adequately represent the proposed class, as required by Rule 23(a)(4). Dolgow v. Anderson, *supra*. These requirements must be strictly construed and stringently applied, since many absent class members will be bound by the judgment. Eisen v. Carlisle & Jacqueline, *supra;* Philadelphia Electric Co. v. Anaconda American Brass Co., *supra*. The named plaintiffs are alleged to have interests not wholly compatible with, and rather antagonistic to, the general claims of the class.

As noted above, many named plaintiffs have the strength of their claims mitigated by being vulnerable to the following defenses: failure to provide desired prices and services (e. g., many of the named plaintiffs do not provide mobile service and charge higher prices than other glass repair shops, including the defendant glass shops) and the named plaintiffs have engaged in little or no solicitation of the defendant insurance companies business. Further, in an industry such as that involved in this case, which consists of a large number of small markets, the named plaintiffs will logically be interested in establishing a violation of anti-trust laws in their own specific market areas. Such representatives might naturally be less enthusiastic and capable of discussing other alleged anti-trust violations in the other numerous market areas.

While this Court need not rule on whether the plaintiffs meet all the requirements of Rule 23(a), the cumulative effect of the above cited factors is to cast serious doubt over the appropriateness of a class action in this case under Rule 23(a).

Accordingly, it is hereby ordered that the plaintiffs' motion that this cause be maintained as a class action is denied.