**FREE WORLD FOREIGN CARS, INC.,**
on behalf of itself and members of the class similarly situated, Plaintiff,

v.

**ALFA ROMEO, S.p.A., and Alfa Romeo, Inc., Defendants.**

No. 71 Civ. 2701.

United States District Court,
S. D. New York.

April 8, 1972.

Hammond & Schreiber, New York City, for plaintiff; Alexander Hammond, Dale A. Schreiber, New York City, of counsel.

John F. Jennings, East Orange, N. J., for defendants, Pro Hac Vice.

Stephen A. Weinstein, New York City, for defendants.

EDWARD WEINFELD, District Judge.

Plaintiff is an automobile dealer selling passenger cars of foreign manufacture in New York City. It formerly sold Alfa Romeo cars under a standard form "Dealer Franchise Agreement" entered into with Alfa Romeo, Inc. (hereafter defendant), a New York corporation, the sole distributor in the United States of Alfa Romeo cars imported from Italy and manufactured by the codefendant, Alfa Romeo, S.p.A., a corporation organized under the laws of the Republic of Italy, with its headquarters in Milan, which is alleged to own all or almost all the outstanding stock of the defendant.

Plaintiff retailed Alfa Romeo cars under its franchise agreement with the defendant from March 14, 1968, to January 22, 1971, when the defendant terminated plaintiff's franchise upon a claim that it had breached its terms by an unauthorized change of its sales location and facilities, and so notified plaintiff.

On April 12, 1971, plaintiff's attorneys, in response to a Dun & Bradstreet inquiry about a claim advanced by defendant against plaintiff for "an unpaid account of $1,058.55," stated they represented plaintiff in an action to be brought against defendant "for unlawful cancellation of its franchise agreement and for other claims." Thereafter, on June 18, 1971, plaintiff commenced this action on its own behalf "and members of the class similarly situated." The complaint alleged three separate counts: (1) that the standard provisions of the defendant's "Dealer Franchise Agreement" contain territorial restrictions upon dealers in violation of section 1 of the Sherman Act, 15 U.S.C., section 1; (2) that they illegally require dealers to purchase parts and in excessive quantities exclusively from the defendant, in violation of section 3 of the Clayton Act, 15 U.S.C., section 14, and as to these counts it is alleged the two defendants conspired to violate section 1 of the Sherman Act, 15 U.S.C., section 1; and (3) by reason of the foregoing, the defendant failed to act in good faith toward plaintiff and other members of the class in a fair and equitable manner so as to guarantee them freedom from coercion, intimidation and from threats of coercion and intimidation in violation of the Automobile Dealers Franchise Act, 15 U.S.C., sections 1221–25. Damages are sought in the sum of one million dollars, "trebled where appropriate," reasonable counsel fees, and a declaration that the alleged provisions of defendant's "Dealer Franchise Agreement" violate the federal antitrust laws. Alfa Romeo, S.p.A. answered for the sole purpose of contesting jurisdiction. The defendant Alfa Romeo, Inc. answered, denying the material allegations of the complaint and interposed various defenses, including a denial that this action may properly be maintained as a class suit. The defendant also counterclaimed, contending that if plaintiff had any cause of action, it was for breach of a simple contract; it further alleged that plaintiff had other franchises for other foreign cars; that plaintiff had no economic dependence upon Alfa Romeo automobiles; that defendant's share of the total market was minimal, less than one per cent, which was well known to plaintiff and others in the industry.

Finally, the defendant alleged that plaintiff's class action claim was specious, an attempt to coerce it into recognizing the contract action by the threat of burdensome and excessive costs and attorneys' fees in resisting the class action suit.

Plaintiff now moves under Rule 23 of the Federal Rules of Civil Procedure that the action may be maintained as a class action on behalf of all "dealers of defendant Alfa Romeo, Inc., who have at any time since June 18, 1967" been parties to defendant's standard form "Dealer Franchise Agreement"—in sum, plaintiff, as a former and terminated dealer, now seeks to represent all classes, including those who are presently functioning under such agreements. The defendants oppose upon various grounds, including that what originally was a simple individual claim for breach of a franchise agreement has now mushroomed into a three million dollar antitrust suit encompassing the alleged interests of all the defendant's dealers. While the merits of plaintiff's claims are not at issue on a Rule 23 motion,[1] the defendant contends there are no per se violations under the agreement and therefore urges there are no common questions of law and fact, and consequently any alleged antitrust violations involve individual issues of fact which concern the distributor-retailer relationship of each Alfa Romeo dealer.

Plaintiff did not deal exclusively in Alfa Romeo cars; it was also (and still may be) a dealer in Fiat and Toyota cars; and it is alleged that most Alfa Romeo dealers have from one to four other foreign car franchises. As to current Alfa Romeo franchise dealers, there are 114 throughout the United States, and plaintiff seeks to represent them.

■■ To be maintainable as a class action, a suit must meet all the requirements specified in Rule 23(a) and also qualify under one of the subdivisions in 23(b).[2] The criteria governing each prerequisite have recently been analyzed and evaluated by our Court of Appeals,[3] and there is no need here to enumerate and consider each applicable standard, since this court is of the view that plaintiff's motion should be denied on two grounds. First, plaintiff, as a former franchisee, is not a member of the class of present franchisees.[4] Nor is it an adequate representative to protect their interests. The provision under

1. Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427 (5th Cir. 1971); Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). *See also* Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1961); Burland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969); Fogel v. Wolfgang, 47 F.R.D. 213, 215 n. 4 (S.D.N.Y.1969); Mersay v. First Republic Corp., 43 F.R.D. 465, 469 (S.D.N.Y.1968). *But compare* Dolgow v. Anderson, 43 F. R.D. 472, 501 (E.D.N.Y.1968). With respect to the latter, the First Circuit Court of Appeals observed: "We are mindful of Judge Weinstein's approach in Dolgow v. Anderson, . . . in requiring, prior to determining a class, that there be a substantial possibility of prevailing on the merits, but are dissuaded from adding this requirement, particularly in civil rights cases, by the observations of Judge Tyler in Fogel v. Wolfgang, 47 F.R.D. 213, 215 n. 4 (S.

D.N.Y.1969). *See also* Katz v. Carte Blanche Corporation, 52 F.R.D. 510, 513–514 (W.D.Pa.1971)." Yaffe v. Powers, 454 F.2d 1362 (1st Cir., 1972).

2. West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079, 1089 (2d Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L. Ed.2d 115 (1971); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564 (2d Cir. 1968).

3. *See* Korn v. Franchard Corp., 456 F.2d 1206 (2d Cir. 1972).

4. *Cf.* Carroll v. Associated Musicians, 316 F.2d 574 (2d Cir. 1963); Syna v. Diners Club, 49 F.R.D. 119, 121 (S.D. Fla.1970); Pavlak v. Duffy, 48 F.R.D. 396, 398 (D.Conn.1969). *See also* Hansberry v. Lee, 311 U.S. 32, 44–45, 61 S. Ct. 115, 85 L.Ed. 22 (1940); 3B J. Moore, Federal Practice § 23.04 (2d ed. 1969); 2 W. Barron & A. Holtzoff, Federal Practice & Procedure § 567 (Rules ed. Wright 1961).

Rule 23(a) that the class representative "will fairly and adequately protect the interest of the class" is not restricted to the adequacy of legal representation,[5] but also requires that the purported representative have common interests with its members and that there be no existing or potential conflict of interest.[6]

■ Plaintiff's interest as a former and terminated franchisee is not co-extensive and consistent with those of the present franchisees who, from all that appears in this record, presently depend upon the economic viability of the defendant. Indeed, plaintiff's interest in this suit may be adverse to this group. Its sole interest is in the recovery of damages. It is of no concern to plaintiff whether the defendant can survive economically against the threat of heavy and burdensome expenses involved in resisting a class action. It is a matter of concern to present franchise dealers that defendant remain in business and that they have a continued source of supply of Alfa Romeo automobiles and parts. The defendant contends, and experience justifies its claim, that the expense of defending this action, were it determined to be a class action, would be enormous as compared with a simple suit involving a dispute over the termination of a contract or an individual antitrust suit. The claim that the threat of a substantial judgment may force defendant to terminate all existing dealers appears real rather than fanciful. The defendant has a minimum share of the entire automobile market in the United States; for the eleven months ending November 30, 1971, 1,672 Alfa Romeo automobiles were reported registered out of a total of 8,830,575, only .00188% of the total market; as to foreign imported cars, a total of 1,354,003 were registered, and defendant's share of that market is .001234.

The plaintiff's contention that present franchise dealers need the protective umbrella of a class action to assert their rights because of fear of reprisal or termination of their existing one-year franchise in the event they commence suit is unsupported and unpersuasive. The history of antitrust litigation records instance after instance where small dealers have not hesitated to take on giant corporations in antitrust litigation, and there is no basis to assume that if any dealer for whom plaintiff professes to speak believes the franchise agreement violative of our antitrust laws, he is not capable or would hesitate to bring suit to vindicate his rights.[7]

■ It is no answer to say that those franchise dealers who do not desire to be represented by plaintiff may opt out under the provisions of Rule 23(c) (2). The machinery of the Rule, with its attendant expense, should not be brought into play unless initially plaintiff, who has the burden of proof,[8] justifies its application.

■ Second, under the circumstances here presented, I do not consider a class action superior to other available methods for the fair and efficient adjudication of the controversy, a most "important" requirement under paragraph (b) (3) of the Rule.[9] This litigation, as

5. There is no issue raised here as to the competency or experience of plaintiff's counsel.

6. *See* Korn v. Franchard, 456 F.2d 1206 (2d Cir. 1972); 3B J. Moore, Federal Practice § 23.07 (2d ed. 1969).

7. *See* Frankel, Amended Rule 23 From a Judge's Point of View, 32 A.B.A. Antitrust L.J. 295, 298 (1966).

8. *Cf.* Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, 395 U.S.

977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 457 (E.D.Pa.1968); Carroll v. Associated Musicians, 206 F.Supp. 462, 470 (S.D.N.Y. 1962), aff'd, 316 F.2d 574 (2d Cir. 1963).

9. Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).
   While plaintiff contends that this action may also be maintained under para-

noted, had its genesis in the termination of plaintiff's franchise because of an alleged breach thereof by plaintiff, which it denies; however, the sequel was not a litigation involving the alleged breach, but this instant antitrust suit now sought to be maintained as a class action. It is recognized that Rule 23 invokes a liberal policy to encourage suits to redress rights where claims "would otherwise be too small to warrant individual litigation." [10] This policy, however, is not to be construed as a means of converting what should be an ordinary and simple lawsuit between two litigants into a class action with all the problems and expense inherent in such suits. The Rule is not intended to permit a private litigant to enhance his own bargaining power by a claim that he is acting for a class of litigants.[11] This court, of course, applies Rule 23 as it now exists.[12] However, it is not idle to observe that class actions, which have proliferated tremendously since the advent of the current Rule—indeed beyond the expectations of its sponsors—threaten to engulf the courts;[13] that substantial questions have been raised whether the Rule, intended to benefit the small consumer or investor who otherwise would have no means of redress, has really achieved its promise, or rather whether it has resulted in miniscule recoveries by its intended beneficiaries while lawyers have reaped a golden harvest of fees.[14] Our own Court of Appeals, acknowledging the policy of liberal application of the Rule, nonetheless cautioned against permitting "actions to proceed where they are not likely to benefit anyone but the lawyers who bring them." [15]

Realistically viewed, this is not a case of redressing group wrongs or requiring "semi-public remedy administered by the lawyer in private practice." [16] Plaintiff on its own can litigate with defendant its antitrust claims or any other claims even in the absence of class determination. The court is satisfied that this action will proceed even though class ac-

graphs (b) (1) or (b) (2) of Rule 23, thus avoiding the need to satisfy the (b) (3) requirements, those sections are inapplicable. There is little risk of inconsistent adjudications as contemplated under (b) (1), in view of the absence of other suits; moreover, the instant case may serve as a test case. Further, since this action by a former franchisee is predominantly for damages rather than injunctive or declaratory relief, it is not within (b) (2). *See* Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564 (2d Cir. 1968). Significantly, in Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Cal.1967), which also involved alleged antitrust violations grounded in a franchise agreement, the class action was based upon compliance with the (b) (3) requirements.

10. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560, 563 (2d Cir. 1968). *See also* Swanson v. American Consumer Indus., Inc., 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969); Escott v. Barchris Constr. Corp., 340 F.2d 731, 733 (2d Cir.), cert. denied, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed. 2d 63 (1965).

11. Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 42 F.R.D. 324, 328 (E. D.Pa.1967); *see* Handler, The Shift from Substantive to Procedural Innovations in Antitrust Suits, 71 Colum.L.Rev. 1, 8–9 (1971). *See also* Saltzman v. Technicolor, Inc., 51 F.R.D. 178, 183 (S.D.N.Y.1970).

12. *Cf.* Korn v. Franchard, Docket No. 35578, 456 F.2d 1206, 1209 n. 5 (2d Cir. 1972).

13. *See* American College of Trial Lawyers, Report and Recommendations of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure 13–15 (1972).

14. *See* American College of Trial Lawyers, *supra* note 13, at 21–25; Handler, *supra* note 11, at 10; Millstein, Federal Consumer Protection—Are Class Suits an Answer, 26 The Record of the Assn. of the Bar of the City of New York 664, 669–70 (1971).

15. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 567 (2d Cir. 1968).

16. Dolgow v. Anderson, 43 F.R.D. 472, 481 (E.D.N.Y.1968).

tion determination is denied.[17] Plaintiff's response to the Dun & Bradstreet inquiry, previously referred to, that plaintiff's claim exceeded $200,000, if asserted in good faith, is a reliable forecast of vigorous prosecution of this action.[18] If any franchise dealer, past or present, should commence any actions, these may, under the Rules, be consolidated with this suit where appropriate, and if instituted in other districts, relief is available under the Multidistrict Litigation Act, section 1407 of Title 28. The most expeditious, fair and efficient method for adjudication of this controversy can be achieved by its going forward on its own.

The plaintiff's motion for class action determination is denied and defendant's motion to strike class action allegations is granted.

17. *Cf.* Eisen v. Carlisle & Jacquelin, 370 F.2d 119, 120 (2d Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967).

18. *Cf.* Caceres v. International Air Transp. Ass'n, 46 F.R.D. 89, 95 (S.D.N.Y.1969), appeal dismissed, 422 F.2d 141 (2d Cir. 1970).