Francis B. SCHULER, Jr.

v.

BETTER EQUIPMENT LAUNDER CENTER, INC. d/b/a Dry Cleaning Franchises of New England and Martin Equipment Sales Division, American Laundry Machinery Industries Division of McGraw-Edison Company.

Civ. A. No. 72–3823–F.

United States District Court, D. Massachusetts.

Feb. 14, 1977.

Harold Brown, Boston, Mass., Leon J. Greenspan, Daniel L. Kurz, Greenspan & Aurnou, White Plains, N. Y., for plaintiff.

Joseph D. Steinfield, Boston, Mass., for Martin Equipment Sales Div. and American Laundry, Machinery, etc.

Sidney Heimberg, Brookline, Mass., for Better Equipment Launder Center, Inc.

Philip F. Zeidman, Washington D. C., for Martin Equipment Sales Div., etc.

## ORDER

FREEDMAN, District Judge.

This matter is before this Court on plaintiff's motion to certify a class consisting of all former franchisees of the defendant, Martin Sales, American Laundry Machinery, a McGraw-Edison Company division [hereinafter "American"]. The plaintiff, Francis B. Schuler, Jr., is a former franchisee of American. The action is brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, seeking treble damages for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiff alleges that defendant American combined and conspired with the defendant Better Equipment Launder Center, Inc., d/b/a Dry Cleaning Franchises of New England, [hereinafter "Equipment"] to grant a "One Hour Martinizing" franchise only upon condition that the franchisee purchase from Equipment, a designated equipment vendor, substantially all of the dry cleaning and related equipment needed to operate the franchised business. Plaintiff claims that he and all other former franchisees were foreclosed from becoming franchisees unless they so agreed.

A tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Northern Pacific Railway v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Such an arrangement is a per se violation of the Sherman Act when the tying product possesses sufficient economic power to appreciably restrain free competition for the tied product and a not unsubstantial amount of interstate commerce is thereby affected. *Id.*; *Fortner Enterprises, Inc. v. United States Steel Corporation*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969).

A tying arrangement may be shown by express contractual terms or by evidence that the franchisee was required through dealings with the franchisor to purchase from unwanted sources. *E. g. Thompson v. T. F. I. Companies, Inc.*, 64 F.R.D. 140, 146 (N.D.Ill.1974). However, class action is appropriate only in the former situation. In the latter situation class action is inappropriate since some kind of coercive effect by the defendant upon the plaintiff must be shown on an individual, case by case basis. *Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211 (3d Cir. 1976). Although plaintiff's counsel has pointed to various decisions from circuits other than the Third in an attempt to erode the authoritative value of the *Ungar* decision, I still find that decision persuasive.

Because class action is not appropriate unless the tying arrangement is based upon contractual terms, it is necessary to examine the nature of plaintiff's antitrust allegations to determine to what extent, if any, it is based upon the express terms of the franchise agreement. Plaintiff's complaint alleges, inter alia, that the terms of the franchise contract violate the Sherman Act. Complaint ¶ 13, ¶ 16A and C. I need not presently make any determination as to the

merits of this contractual claim. It is sufficient to state that to the extent a claim based solely on the franchise contract exists, the Court concludes there are questions of law or fact common to the class, that the claims or defenses of the plaintiff áre typical of those of the class, and that the plaintiff will fairly and adequately protect the interests of the class. Fed.R.Civ.P. Rule 23(a). However, the Court is not persuaded at this time that the plaintiff has shown that the members of such a class would be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. Rule 23(a)(1).

■ Plaintiff purports to represent all former franchisees. However, the scope of this proposed class is too large. The franchise agreement signed by plaintiff was only one of three different franchise contracts used by the defendant American. The contract signed by plaintiff was in use from April 15, 1965 until October 15, 1970 at which time a new form became effective. This second contract was in use until March 31, 1972 when a third form of agreement came into use. Although all these contracts differed in actual form, the substance of the first two with regard to the alleged tying arrangement was essentially the same. The two earlier contracts provided in relevant part:

. . . the STORE OPERATOR agrees to strictly adhere to the practices and regulations promulgated by MARTIN ["American"] from time to time concerning the identification, standards and quality of such certified service together with all other services performed at The Store. Such practices and regulations include by way of illustration and not limitation: (a) use by the STORE OPERATOR of only that machinery, equipment, furniture,

fixtures, signs and supplies approved by MARTIN,

.    .    .    .    .

The STORE OPERATOR when requested agrees to supply MARTIN with full information as to equipment and supplies used in the operation of The Store,

.    .    .    .    .

At the end of the above term this Franchise Agreement is subject to renewal by mutual agreement between MARTIN and the STORE OPERATOR in accordance with such requirements as to methods, procedures, service, cleanliness, equipment, as well as other policies that MARTIN may impose at that time.

The third contract form eliminates these provisions. Consequently, this third form is irrelevant to any claim plaintiff has based on the terms of the franchise agreement. Therefore, the class proposed by plaintiff must be limited to only those former franchisees who signed one of the two earlier contracts. Plaintiff has not demonstrated how many members such a class would include and thus has not sustained its burden that joinder would be impracticable.

Plaintiff alleges that this information is within the defendant's files and although requested by plaintiff has not been provided by the defendant. The defendant relies upon Fed.R.Civ.P. Rule 33(c)[1] in replying that plaintiff may obtain the information by access to defendant's applicable business records. The Court notes the difficulty the parties have encountered in arranging a time to exchange this information. However, in view of its importance in resolving the class certification issue, the Court strongly recommends that counsel for plaintiff and defendant American agree immediately on a mutually convenient time to al-

1. Fed.R.Civ.P. Rule 33(c) provides:

(c) Option to Produce Business Records. Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, or from a compilation, abstract or summary based thereon, and the burden of deriving or as-

certaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries.

low plaintiff access to American's records to gather the necessary information.

█ Plaintiff's counsel argues in his memorandum that, even without this precise information, the Court can infer that there is a sufficiently large number of former franchisees from the large number of present franchisees. Knowledge of the exact number of class members is not essential in order to satisfy the numerosity requirement. *Albertson's Inc. v. Amalgamated Sugar Company*, 62 F.R.D. 43, 52 (D.Utah, C.D.1973), *aff'd* 503 F.2d 459 (10th Cir. 1974). However, in view of the limitation which the Court now places on plaintiff's proposed class by further narrowing class membership to those former franchisees who signed one of the two earlier franchise agreements, the inference suggested by the plaintiff is insufficient to satisfy the plaintiff's burden. Not only would the Court be forced to guess at the total number of former franchisees, but it would also have to guess how many of those former franchisees signed one of the two earlier contracts. The Court refuses to engage in such speculation. However, if, in the course of discovery, such information becomes available to the Court, this suit, insofar as it alleges Sherman Act violations which are based on the franchise contract alone, may be maintained as a class action upon motion by the plaintiff. The requirements of Fed.R.Civ.P. Rule 23(a) and (b)(3) [2] would then have been satisfied. However, to the extent the antitrust violations are based on actions or practices on the part of the defendants beyond the scope of the express provisions of the franchise agreement, plaintiff's motion for class certification is denied.

---

**2.** The Court concludes that the requirements of Rule 23(b)(3) would then be met since the common questions of law or fact would predominate over any questions affecting only individual members and class action would thus be superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. Rule 23(b)(3).