**SOUTHERN SNACK FOODS, INC., Plaintiff,**

v.

**J & J SNACK FOODS CORPORATION, Defendant.**

Civ. A. No. 77–1608.

United States District Court, D. New Jersey.

Aug. 30, 1978.

Lewis Kates, Kates & Livesey, Philadelphia, Pa., Joel Feldscher, Cherry Hill, N. J., for plaintiff.

John V. Fiorella, Archer, Greiner & Read, P. C., Haddonfield, N. J., for defendant.

## OPINION

BROTMAN, District Judge.

This matter is before the court on plaintiff's motion for class certification pursuant to Fed.R.Civ.P. 23. Plaintiff, Southern Snack Foods, Inc. (hereinafter "Southern"), is a former franchisee-distributor in defendant J & J Snack Foods Corporation's (hereinafter "J & J") soft pretzel business. Southern has brought suit for breach of contract and various antitrust violations contained in the Distributorship Agreement between Southern and J & J. The breach of contract claim is not involved in this motion for class certification. The specific allegations of illegality under the antitrust laws are (1) that J & J illegally tied the license of its trade name and service marks to the requirement that Southern purchase

only from J & J its soft pretzels and baking equipment, and that J & J illegally tied the sale of soft pretzels to the requirement that Southern also purchase baking equipment, 15 U.S.C. § 1; (2) that J & J illegally imposed territorial and customer restrictions in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; and (3) that J & J illegally required Southern to purchase pretzels and other products solely from J & J, an unlawful exclusive dealing arrangement under Section 1 of the Sherman Act and Section 3 of the Clayton Act, 15 U.S.C. § 14.

■ On this motion, plaintiff seeks certification of a class consisting of the fourteen former and thirty-five present distributors of J & J. The burden is upon Southern to prove that its lawsuit meets the requirements of Fed.R.Civ.P. 23. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Southern must demonstrate that this action fulfills the four prerequisites of Rule 23(a) and that it fits within one of the three categories listed in Rule 23(b). In addition, Southern must meet two implicit prerequisites, that a class exists and that Southern is a member of the class.

■ Any certification decision necessarily depends on the facts of the particular case. The first question that must be answered in this case is whether a former distributor or franchisee of defendant can properly represent a class of former and present franchisees. This question can best be discussed in terms of adequacy of representation, Fed.R.Civ.P. 23(a)(4), although it is often also related to the typicality requirement, Rule 23(a)(3), or the prerequisite that plaintiff be a member of the class it seeks to represent. Adequacy of representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class. *Wetzel v. Liberty Mutu-*

*al Ins. Co.,* 508 F.2d 239, 247 (3rd Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). It is only the second factor which is in issue here. As defendant has noted, many cases do hold that a former franchisee cannot represent a class consisting of both former and present franchisees. *Aamco Automatic Transmissions, Inc. v. Tayloe,* 67 F.R.D. 440 (E.D.Pa.1975); *Thompson v. T.F.I. Companies, Inc.,* 64 F.R.D. 140 (N.D.Ill.1974); *DiCostanzo v. Hertz Corp.,* 63 F.R.D. 150 (D.Mass.1974); *Matarazzo v. Friendly Ice Cream Corp.,* 62 F.R.D. 65 (E.D.N.Y.1974); *Seligson v. Plum Tree, Inc.,* 61 F.R.D. 343 (E.D.Pa.1973); *Van Allen v. Circle K Corporation,* 58 F.R.D. 562 (C.D.Cal.1972); *Free World Foreign Cars v. Alfa Romeo,* 55 F.R.D. 26 (S.D. N.Y.1972).[1]

■ The reasons given in the cited cases for refusing to allow such representation are applicable to this case. The present franchisees of J & J depend on the continued economic viability and public goodwill of J & J. On the contrary, the principal concern of the past distributors is a maximum recovery of money damages, without regard to any adverse impact on the present system. *Aamco, supra* at 446; *Van Allen, supra* at 564; *Free World Foreign Cars, supra* at 28. Therefore, "the protection a former licensee may render the class 'is bound to suffer if not in zealousness then perhaps in overzealousness.' *Gaines v. Budget Rent-A-Car Corp.* [1972 CCH Tr. Cas. ¶ 73.860 (N.D.Ill.1972)], *supra* at 91,-605." *Thompson, supra* at 148.

Additionally, this suit threatens the existing contractual relationship between defendant and its present franchisees, which may well operate to their benefit. Count 3 challenges the exclusive dealing requirement. The Supreme Court has noted that such contracts may be of economic advantage to buyers as well as sellers, for it assures the buyer his source of supply. *Tampa Electric Co. v. Nashville Co.,* 365 U.S. 320, 334, 81 S.Ct. 623, 5 L.Ed.2d 580

---

1. *Schuler v. Better Equipment Launder Center, Inc.,* 74 F.R.D. 85 (D.Mass.1977), also cited by defendants for this proposition, is inapposite because plaintiff therein sought to represent only a class of former franchisees.

(1961); *see also Free World Foreign Cars, supra.* Count 2 challenges the territorial and customer restrictions. Again, present franchisees may benefit from these restrictions due to reduced intrabrand competition. Also present franchisees would fear that the elimination of these restrictions might provide incentive for J & J to vertically integrate into its distribution system, thereby eliminating the need for franchisees. *Continental TV v. GTE Sylvania, Inc.,* 433 U.S. 36, 51, 57 n.26, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977); *cf. Aamco, supra* at 446.

Plaintiff has offered no compelling reason for the court to deviate from the general rule that former class members are not adequate representatives of the class. *Thompson, supra* at 149. Plaintiff suggests that it would be an appropriate representative because as a former distributor, it is free from any possible coercive influences of the defendant, and could provide a protective umbrella for the maintenance of this suit by the present franchisees. Plaintiff cites *Wetzel, supra,* in support. However, *Wetzel* arose in the very different factual situation of an employment discrimination suit. The Third Circuit allowed a past employee to represent present employees because it did not want to encourage employers to discharge those employees suspected as most likely to initiate a. Title VII suit. This court feels that the defendant in this case would have much greater difficulty replacing one of its 34 franchisees than a single employee. Further, the *Wetzel* court found that all parties were interested in the elimination of discrimination. As noted above, the present franchisees of J & J may not be interested in the elimination of their present contractual arrangements. Finally, the need for a protective umbrella, while possibly relevant for an individual in an employment suit, has been found to be unnecessary in an antitrust action. As stated in *Free World Foreign Cars, supra,* history is full of examples of small dealers not hesitating to take on industrial giants.

Plaintiff further argues that the court should certify the suit as a class action and then wait and see if any of the present dealers opt out. However, it has repeatedly been held that the plaintiff must first satisfy its burden before a class will be certified, and that the expensive machinery of the class action rule should not be brought into play until that burden is met.[2] *Thompson, supra* at 149; *Aamco, supra* at 446; *Free World Foreign Cars, supra* at 28; *Matarazzo, supra* at 68; *Lukenas v. Bryce's Mountain Resort, Inc.,* 538 F.2d 594, 596 (4th Cir. 1976). Plaintiff contends that *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3rd Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) would allow or even require such a procedure. In *Bogosian,* however, the class representatives were two present lessees of certain oil companies who were also former lessees of other oil companies. From the record before it, the court held that the conflicts were not so obvious as to defeat certification at that point in the proceedings. Present lessees would not threaten the disruption of current contractual relations. At worst, they might not seek money damages as vigorously as a representative for only the former lessees. The court feels the inherent antagonism in the instant situation is greater than that in *Bogosian.*

Finally, many of the other cases cited by plaintiff in support of a joint class of present and past distributors are distinguishable from the instant situation. In *Robertson v. National Basketball Association,* 389 F.Supp. 867 (S.D.N.Y.1975), there were no past players in the class when the suit was first commenced, the named plaintiffs included both past and present players, and affidavits were submitted showing that former players did care about the future of the NBA and that they felt there was no conflict. In *Hermann v. Atlantic Richfield Co.,* 65 F.R.D. 585 (W.D.Pa.1974), the named plaintiffs included both former and

---

**2.** At oral argument, counsel for both parties rejected bringing this issue to an immediate resolution by following a course similar to that

suggested in *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 462 (E.D.Pa.1968).

present lessees. *Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65, 137 (E.D.Pa. 1975), *reversed on other grounds,* 531 F.2d 1211 (3rd Cir. 1976) also had both present and former franchisees involved in the suit. *See Aamco, supra* at 446 n.5.

In conclusion, the court finds that there is an inherent antagonism between former and present distributors in the context of this suit. Accordingly, plaintiff as a former distributor cannot represent a class including the present distributors of defendant. Fed.R.Civ.P. 23(a)(4).

▇ The court also finds that a class consisting solely of the past distributors would not be appropriate in this case. Rule 23(a)(1) requires that the class be so numerous as to render joinder impracticable. The question of whether a number of potential class members is so large as to make joinder impracticable is not based solely on an arbitrary numerical limit, but rather upon all of the circumstances of the case. Standing alone, fourteen is not such a large number of plaintiffs that joinder would create an unmanageable suit. *E. g., Thompson, supra* at 146; *Anderson v. Home Style Stores, Inc.,* 58 F.R.D. 125 (E.D.Pa.1972).

Plaintiff argues that the geographical dispersion of the potential class members makes joinder impracticable, and justifies class certification. The court finds other factors present which weigh against certification.

▇ First, there is inherent antagonism in the plaintiff representing the class of past distributors on the territorial and customer restriction claim. Fed.R.Civ.P. 23(a)(4). To establish that the antitrust laws have been violated on this claim, each plaintiff must show the fact of damage. This requires proof with reasonable certainty that there was some injury to the plaintiff's business in consequence of the territorial restrictions. Thus, each plaintiff must show that it would have done some business outside its own territory. *Pitchford v. Pepi, Inc.,* 531 F.2d 92, 104 (3rd Cir. 1976), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387. It is the reduction of intra-band competition which is the evil of vertical territorial restrictions. *Continental TV, supra* at 51. Southern is alleging that these restrictions should not have existed, and thus that each distributor should have been a competitor of the others. This type of situation, where damage is measured by business not done, has been found to constitute inherent antagonism and preclude class certification. *Chestnut Fleet Rentals, Inc. v. Hertz Corp.,* 72 F.R.D. 541, 545–46 (E.D. Pa.1976); *Al Barnett & Son, Inc. v. Outboard Marine Corp.,* 64 F.R.D. 43, 50–51 (D.Del.1974); *cf. Newberry v. Washington Post Co.,* 71 F.R.D. 25, 27 (D.D.C.1976). Later individual treatment of the fact of damage question has been held not to cure this problem. *Chestnut Fleet Rentals, supra* at 546. Plaintiff has cited no cases where a class was certified on a territorial restriction claim.

Additionally, there are problems with Southern representing the class of past distributors on the tying claims. At most, only 12 of the 14 former franchisees ever made equipment purchases, so the numerosity requirement as to the claimed tie of equipment to the trademark is even weaker than the others. *See* answer to plaintiff's interrogatory 7. Also, the statute of limitations will apparently bar most of Southern's claim for damages as to the equipment purchases other than replacement parts.

▇ In sum, while the fourteen potential class members may be geographically scattered, this is not a situation where their claims are so small that they will not be pressed without the use of the class action mechanism. Treble damages provide a significant inducement to bringing suit. Other aggrieved past franchisees can press their claims with adequate counsel of their own. Failure to certify a class will not be a "death knell" for anyone's claims. *Newberry, supra* at 27; *Boston Pneumatics, Inc. v. Ingersoll-Rand,* 65 F.R.D. 61 (E.D.Pa.1974); *Seligson, supra* at 346; *Free World Foreign Cars, supra.* Therefore, because of the small number of potential plaintiffs, the large potential recovery, and the inherent conflict in the territorial restriction claim,

the court shall deny class certification in this matter.

Counsel for defendant J & J shall submit an appropriate order within five days.

