Alfred T. NEWBERRY, Jr., et al., Plaintiffs,

v.

The WASHINGTON POST COMPANY, Defendant.

Civ. A. No. 75–1865.

United States District Court, District of Columbia.

Jan. 13, 1976.

Wallace Edward Brand, Donald A. Randall, Washington, D. C., for plaintiffs.

John Rounsaville, Jr., Daniel K. Mayers, A. Douglas Melamed, James S. Campbell, Alan R. Finberg, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

This is a treble damage jury case alleging violations of Sections 1, 2 and 3 of the Sherman Act and Sections 2 and 3 of the Clayton Act. Fourteen named plaintiffs sue on their own behalf and as representatives of an alleged class of approximately

180 job lot dealers handling distribution of the *Washington Post* in the Washington, D. C. Metropolitan Area.

■ Following answer denying the claims, defendant moved to strike the class action allegations and plaintiffs cross-moved seeking certification of the class under Fed.R.Civ.P. 23(a) and (b)(3). Considerable factual information was furnished and the issues were thoroughly briefed and argued by experienced counsel. The certification of the class is addressed to the Court's discretion and plaintiffs, of course, have the burden.

The Post's decision to shift from a system of distribution by independent dealers to an agency system lies at the core of this litigation. The Post asserts that this forward integration was desirable for legitimate business reasons and denies that it had any substantial adverse competitive effect. Plaintiffs' principal claim is that the Post effected substantial restraints on price and other forms of competition by forcing dealers to shift to the anticompetitive agency system through misrepresentation and other types of actual economic coercion.

It is not disputed that there are some common questions of fact and law. The challenge to the class rests primarily on two highly relevant considerations: first, that the interests of the named plaintiffs are antagonistic to those of at least some members of the purported class and hence representation is inadequate and, second, that there are inherent difficulties in the management of the case which as a practical matter make the class action technique the inferior rather than the superior method for proceeding. Numerous cases have been cited and considered, including the following, primarily relied on by plaintiffs, *Ungar v. Dunkin' Donuts, Inc.,* 68 F.R.D. 65 (E.D.Pa. 1975), *appeal pending,* 531 F.2d 1211, (3d Cir.); *Jacobi v. Bache & Co., Inc.,* 16 Fed.R. Serv.2d 761, 1972 Trade Cas. ¶ 73,980 (S.D. N.Y.1972), and those upon which defendant places considerable emphasis, *Albertson's, Inc. v. Amalgamated Sugar Co.,* 503 F.2d 459 (10th Cir. 1974); *Phillips v. Klassen,* 163 U.S.App.D.C. 360, 502 F.2d 362, *cert. denied,* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974); *Knutson v. Daily Review, Inc.,* 383 F.Supp. 1346 (N.D.Cal.1974), *modified,* 401 F.Supp. 1374 (N.D.Cal.1975); *Al Barnett & Son, Inc. v. Outboard Marine Corp.,* 64 F.R.D. 43 (D.Del.1974); *Shaw v. Mobil Oil ·Corp.,* 60 F.R.D. 566 (D.N.H.1973), and *Lah v. Shell Oil Co.,* 50 F.R.D. 198 (S.D.Ohio 1970). These decisions all teach that general propositions do not control and emphasize the need closely to examine the practical aspects of trial as well as the legal interests of the proposed class on a case-by-case basis.

■ In this instance, it is strikingly apparent on analysis that the interests of the proposed class are antagonistic both as a matter of law and in fact. Indeed, blatant antagonism among members of the proposed class has already surfaced in the papers. This situation is so obvious and pervasive that it alone defeats the class. Some unnamed members of the class are, in effect, claimed to be conspirators who combined with the Post in its alleged illegal distribution. Others are claimed to be victims. There is presently no basis for sorting out the two groups since plaintiffs' proof is not based upon a single agreement or transaction such as is present in a typical price or tying case. It would be necessary to develop the entire course of dealing between the Post and each dealer before the differentiation could even be attempted and obviously plaintiffs' counsel is not the proper representative to do the sorting out.

Plaintiffs rely heavily on *Ungar, supra,* a traditional tying case where the distribution system attacked was inherently coercive at least in legal theory. Here there is no readily identifiable illegal requirement found in the dealer or agency contracts and no showing that all dealers were under economic compulsion or believed that the shift from dealer to agent was uneconomic. There are divergent views, divergent facts and divergent interests in the group and no catch-all class is apparent.

Moreover, there are major practical trial difficulties which emphasize the inherent antagonism and mitigate against class certi-

fication. From a class point of view, damages are the preponderant objective of this treble damage jury action. Determination of a violation or violations of the Sherman Act establishes nothing automatically as far as the measure of individual damage claims is involved. Each dealer would have to establish individually both impact and the extent of injury. The dealers differ markedly in size, efficiency and area served. Their damage claims would conflict as disputes over potential markets emerged. Dealers would not only be antagonistic in pursuing their individual claims, but they would each have to rely on a separate and varied course of dealing with the Post to establish impact. There is no statistical study or easy formula which can be relied on by plaintiffs because the economics of each dealership differ. Damage proof would be unmanageable if the case proceeds as a class action, and in the circumstances of this suit the Court believes that it is undesirable and impractical for a jury to consider the issue of damages in a separate proceeding independent from the proceeding on liability.

There are other considerations which have influenced the Court's exercise of discretion. The proposed class is not a homogeneous group of persons with small individual claims, unknowledgeable and unable to proceed. The dealers are competent businessmen; the pros and cons of the dealer-agency shift have been fiercely argued in the trade and are well known and those who are aggrieved can press their claims with adequate counsel, considering the large individual recoveries plaintiffs' counsel envision. A variety of different legal remedies and business approaches are available to individual dealers or agents and there is no reason to vouch them into a case they have apparently not wished to join. Nor can class certification be used to create a blanket anonymity and thus protect dealers against theoretical retaliation by the Post, for each class member would have to be clearly identified and its activities subjected to the rigorous demands of pretrial discovery.

The proposed class is simply not one in fact. The convenience of the pleader must not be allowed to override the underlying business facts and practicalities of the situation. The Court in its discretion declines to certify the class. Defendant's motion to strike is granted, plaintiffs' motion to certify is denied and the case will proceed for the named plaintiffs only. A schedule for discovery and further pretrial motions, if any, must be promptly set. A status conference in chambers is set for 9:30 a. m. on January 20, 1976.

SO ORDERED.