Antony BROWN, et al., Plaintiffs,

v.

PRO FOOTBALL, INC., d/b/a
Washington Redskins, et
al., Defendants.

Civ. A. No. 90–1071 (RCL).

United States District Court,
District of Columbia.

Sept. 11, 1992.

Joseph A. Yablonski, Daniel B. Edelman, John F. Colwell, Yablonski, Both & Edelman, Washington, DC, for plaintiffs.

Peter J. Nickles, Gregg H. Levy, Sonya D. Winner, Richard W. Buchanan, Covington & Burling, Washington, DC, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court on (1) NFL Defendants' Motion to Decertify the Plaintiff Class ("Defendants' Memoran-

dum"); (2) Plaintiffs' Opposition to Defendants' Motion to Decertify the Plaintiff Class; (3) Defendants' Reply Memorandum in Support of their Motion to Decertify the Plaintiff Class; (4) Defendants' Motion for Leave to File a Supplemental Memorandum in Support of their Motion to Decertify the Plaintiff Class; (5) Plaintiffs' Response to Defendants' Motion for Leave to File Supplemental Memorandum in Support of Defendants' Motion to Decertify the Plaintiff Class; (6) Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motion to Decertify the Plaintiff Class; (7) Defendants' Motion for Leave to File a Response to Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motion to Decertify the Plaintiff Class; and (8) Plaintiffs' Reply to Defendants' Response to Plaintiffs' Supplemental Opposition to Motion to Decertify the Plaintiff Class.

Upon consideration of the authorities presented in these memoranda and the record herein, the court will grant Defendants' Motion for Leave to File a Supplemental Memorandum in Support of their Motion to Decertify the Plaintiffs' Class; and grant Defendants' Motion for Leave to File a Response to Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motion to Decertify the Plaintiff Class. However, the court will deny Defendants' Motion to Decertify the Plaintiff Class.

## I. *FACTS.*

On June 4, 1991, 782 F.Supp. 125, this court, by memorandum opinion, granted Plaintiff's Motion to Strike the Defendants' Nonstatutory Labor Exemption Defense. In a second memorandum opinion, filed March 10, 1992, 1992 WL 88039, the court granted Plaintiffs' Motion for Summary Judgment on Liability.[1] The relevant facts are extensively presented in these two opinions.

Procedurally, the court's granting of these two motions for summary judgment has left one main issue—damages—for tri-

---

1. NFL Defendants' Motion to Reconsider, or in the Alternative, to Certify for Interlocutory Re-

al. Trial is currently set to begin in less than two weeks.

## II. *DEFENDANTS' MOTION TO DE-CERTIFY THE PLAINTIFF CLASS.*

Having lost their main statutory defense and been found in violation of § 1 of the Sherman Anti–Trust Act, 26 Stat. 209, as amended 15 U.S.C. § 1 (1973 and Supp. 1991), as a matter of law, the NFL defendants' final hope of delaying or preventing this trial is to have the court decertify the plaintiff class.

Defendants' justifications for decertification are two:

(1) The injury and damage determinations will require separate proof as to each class member; thus, common issues no longer predominate over individual issues as required by Fed.R.Civ.Pro. 23.

(2) The class action trial would be unmanageable; thus, Rule 23 suggests that other means of adjudication would be preferable to a class action.

The NFL Defendants substantiate their first contention by examining several members of the class and highlighting the differences among them. Next, defendants state that the court is under an obligation to decertify the plaintiff class if changed or newly-discovered facts would prevent certification. Finally, defendants assert that trial of 235 individual claims would be unmanageable, thus requiring decertification under Rule 23(b)(3).

The court finds none of these arguments persuasive; each will be addressed in turn.

## III. *COMMON AND INDIVIDUAL IS-SUES.*

The NFL Defendants' first argument is that since the court has already decided all common issues in its two orders granting summary judgment, all that remains is the individualized issue of damages. Under Fed.R.Civ.Pro. 23(b)(3), under which the present class was certified on July 6, 1990, amending the class certification of July 3,

---

view, was denied on September 2, 1992.

1990, the court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members...." The NFL Defendants contend that "issues specific to individual class members now unquestionably predominate over common issues," Defendants' Memorandum at 2, thus justifying decertification. The court disagrees.

### A. *Rule 23(a)(2).*

■ As a preliminary matter, the court finds that there still exist, despite the orders for summary judgment, "questions of law or fact common to the class." Fed. R.Civ.Proc. 23(a)(2). Thus, this prerequisite of maintaining class status is met.[2]

First, there is the common question of liability. Though decided against defendants in the summary judgment order of March 10, 1992, the issue of defendants' breach of antitrust laws is still relevant to the jury's determination of damages. *See Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87 (S.D.N.Y.1981). Second, there is the common fact of injury, based on the antitrust activity, suffered by each plaintiff. *See Hedges Enters, Inc. v. Continental Group, Inc.*, 81 F.R.D. 461 (E.D.Pa.1979).

More important, there exist several common issues of fact. Each member of the plaintiff class signed a similar contract to play on similarly-developed and -operated Development Squads for the same weekly salary. Each also negotiated and agreed to a higher activation salary which would be paid should the player be moved from the Development Squad to the actual team.

Finally, there is the common method of proof of damages. Although individual circumstances necessarily exist among the members of the plaintiff class, a reasonable approximation of damages is achievable through a common formula. Thus, the factual basis of the damages is common to all members.

The court therefore concludes that "questions of law or fact common to the class" are sufficient to satisfy the preliminary requirement established by Rule 23(a)(2).

### B. *Rule 23(b)(3).*

■ In addition to meeting the four prerequisites of Rule 23(a), the plaintiff class must also satisfy one of the three requirements of Rule 23(b), in this case, 23(b)(3). This sub-rule has two criteria to be met: first, that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members;" and second, that the class action form is "superior to other available methods for the fair and efficient adjudication of the controversy."[3] The court finds that both requirements are met.

Defendants, in their memoranda, cite the results of depositions of several class-members and highlight the differences among the various players. Emphasized, for instance, are the differences in college and professional experience of the players prior to their signing Development Squad contracts, the varying self-impressions of the athletes, and the disparity in the players' NFL opportunities subsequent to the Development Squad era. Moreover, defendants claim that they have the right to present individualized information and defenses regarding each of the class-members. Thus, they claim, the individual questions overwhelm the common issues and make class decertification mandatory.

■ These differences among players, however, are largely irrelevant and do not preclude class certification. *See, e.g., Genden v. Merrill Lynch, Pierce, Fenner & Smith*, 114 F.R.D. 48 (S.D.N.Y.1987) (common issue in securities case of liability predominated over individual issues such as materiality of alleged misrepresentation). Moreover, the plaintiffs' method of proof is formulaic and is based on the contract each individual signed with a defendant team.

---

2. Numerosity, typicality, and adequacy, the prerequisites found in Rule 23(a)(1), (3), and (4), are not in dispute at this stage in the proceedings.

3. The second requirement, manageability, is considered in Part IV, below.

For purposes of that method, therefore, the individual qualities mentioned above have no practical effect. *See, e.g., Hedges Enters, supra* (formula similar to that proposed by plaintiffs here used to compute damages). *See also Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3d Cir.1977), *cert. den'd,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Windham v. American Brands,* 565 F.2d 59, 68 (4th Cir.1977), *cert. den'd,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). Finally, common issues need not be exclusive, but must only predominate over individual concerns. *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 344 (E.D.Pa.1976).

A larger view of class actions in general lends further support to the class certification. It is rare that any two class action plaintiffs are identically-situated, have received identical injuries, and deserve identical damages. More often, plaintiffs have common injuries from a common source, and the jury must determine the exact amount of each's individual damages. "It is settled that individual issues of fact will invariably be present, and that that fact will not preclude a class action.... Commonality is not ruled out as long as there is no predominance of issues capable only of individual trial." *Herbert B. Newburg,* 3 *Newburg on Class Actions* § 18.07, 2d Ed. (1985). In fact, the framers of Rule 23 seemed to target cases such as this one as appropriate for class determination: "[C]lass actions ... may remain [appealing] despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." *Rules Advisory Committee Notes to 1966 Amendments to Rule 23,* 39 F.R.D. 69, 103 (1966).

By stating that differences among class plaintiffs, particularly when the common elements are so numerous, render the class void, the NFL Defendants are in effect asking the court to eviscerate the class action as a legal remedy. Under their standard, due to the differences inherent in class action plaintiffs, class actions could rarely, if ever, be maintained. Moreover, such a standard would be an incentive for wrongdoers to ensure that they treat each of their victims a little differently, thus ensuring that they create enough discrepancies among any potential plaintiffs to defeat class action status.

Of course, the court cannot accept this cramped reading of the class action, and will refuse to decertify the class solely because there are differences among the members of the plaintiff class. Moreover, in this case, the members share common elements which are not only more relevant to the issues at trial, but also more significant. Because these common issues predominate over any individual issues, the court will not decertify the class.

### C. *Obligation to Decertify.*

Defendants cite several cases in support of their proposition that the court has an obligation to decertify the plaintiff class if new facts come to the court's attention. One set of cases relates to revelations of new facts which make the class certification obsolete. *See, e.g., Reynolds v. Sheet Metal Workers, Local 102,* 702 F.2d 221 (D.C.Cir.1981). In the present case, however, no new dispositive facts have come to light since the original certification in July, 1990, which would alter the court's certification decision. Rather, the same distinct class exists today as then. Thus, these cases are not helpful to the defendants.

The second set of cases purports to require decertification when the only remaining issue is damages. *See, for instance, Newberry v. Washington Post Co.,* 71 F.R.D. 25 (D.D.C.1976); *Ralston v. Volkswagenwerk, A.G.,* 61 F.R.D. 427 (W.D.Mo. 1973). In these cases, "[t]here is no statistical study or easy formula which can be relied on by plaintiffs because the economics of each dealership differ." *Newberry,* 71 F.R.D. at 27. In the present case, however, there is a formula which can be applied to each member of the class: the subtraction of the $1000 weekly salary from the pro rata share of the (higher) activation salary. Thus, although there are necessarily individual issues in the damages determinations, there is a common link among the class members which will serve to justify class action status. These

cases, then, also do not support defendants' claim for certification.

Despite defendants' arguments and authorities, the court finds that common questions, both of law and of fact, predominate over the exaggerated differences defendant claims exist among the 235 class members. The court therefore finds that the maintaining of class certification is justified under Fed.R.Civ.Pro. 23.

## IV. *MANAGEABILITY.*

■ The second argument cited by the NFL Defendants is manageability. In their briefs and at argument, defendants raise the specter of 235 "mini-trials," a legal scenario which they contend will leave the jury confused and unable to render a fair decision.

This argument, however, is unavailing. Plaintiffs have demonstrated that each class member has signed a contract which states not only that the player will receive $1000 per week while on the Development Squad, but also that the player will receive some higher salary if activated. A simple, common formula—the subtraction of the former $1000 from the pro rata share of the latter salary—serves as the measure of damages for each member of the plaintiff class.[4]

> [I]n cases where the fact of injury and damage breaks down on what may be characterized as "virtually a mechanical task," "capable of mathematical or formula calculations," the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability.

*Windham v. American Brands,* 565 F.2d 59, 68 (4th Cir.1977), *cert. den'd,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). In fact, rather than being unmanageable, this trial would appear to be rather simple as class actions go.

The alternative, however, is not only unmanageable but an obvious waste of judicial resources (a waste of the type that class actions were designed to eliminate). Decertification would force as many as 235 separate trials, each with the complete panoply of discovery, expert witnesses, and ·delay. In addition, the issues already decided in this case might have to be relitigated in each of the subsequent cases. When combined with the unpredictability of 235 individual juries regarding the facts, it is clear that this relitigation of settled issues of law would foster inconsistent results on the same legal and operative facts. Fed.R.Civ.Pro. 23(b)(1)(A). Particularly with trial imminent, it is clear that judicial resources will be conserved, and manageability maintained, only if decertification of the plaintiff class is denied.[5]

## V. *CONCLUSION.*

For the reasons set forth herein, Defendants' Motion to Decertify the Plaintiff Class will be DENIED in a separate order filed this date.

---

4. Of course, all damages will be tripled as required by the Sherman Act.

5. It is also clear that decertification might, as a practical matter, leave many members of the plaintiff class without a remedy. Although the NFL Defendants' claim that each class-member's stake in the outcome is great enough to ensure that no class-member would forego litigation due to its cost, this is clearly an incorrect assumption. This has been a hotly contested case, with each side producing thousands of pages of briefs, deposition transcripts, and exhibits. Expert witness fees alone could easily overwhelm even the trebled damages of many class-members, particularly those who played on the Development Squads for only a short time. Only by maintaining the class will these plaintiffs receive the relief they deserve.