[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM Of DECISION[1]
 BACKGROUND
Plaintiffs Estelle McNerney, Nelson Finkle, Marcia Finkle and Donald Barbato (collectively, the "Plaintiffs"), commenced this case with the intention of proceeding in the form of a class action and, on August 10, 1999, toward that end, filed a motion for class certification. The Plaintiffs are former franchisees of defendant Carvel Corporation ("Carvel") who engaged in the retail sale of ice cream products under the Carvel name. Though alleged under a variety of different legal theories, the Plaintiffs essentially assert three basic claims: (i) that bags of ice cream mix ("Carvel Mix") that Plaintiffs purchased pursuant to the terms of their franchise agreements were under-filled by the dairies that manufactured the mix for Carvel; (ii) that bags of Carvel Mix did not conform to product specifications; and (iii) that Carvel and its directors misappropriated or otherwise inappropriately used funds paid by franchisees pursuant to their franchise agreement as a contribution to Carvel's advertising expenses. The Plaintiffs seek to certify two classes of existing and former Carvel franchisees: the Carvel Mix Class (Mix Class)[2] and the Advertising Fund Class (Fund Class).[3]
As previously indicated, Plaintiffs McNerney, Finkle and Barbato are former Carvel franchisees who maintained stores in Pennsylvania, Florida and New York, respectively. They are "former" franchisees because Carvel, pursuant to its franchise agreement with each, elected not to renew Plaintiffs' franchises when their respective franchise terms expired. At least one of the franchisees, McNerney, has continued to engage in the retail sale of ice cream products (similar to the Carvel product) albeit under a different name.
The defendants in this action include: Carvel and three of its directors (Steven Fellingham, Savio Tung and Charles Philippin), and Tuscan Dairy Farm and Tuscan/Lehigh Dairies, L.P. (collectively, "Tuscan"), two of the dairies that manufactured Carvel Mix.[4] Several other dairies that manufactured Carvel Mix during the relevant time period are not defendants in this action.
The Plaintiffs' complaint, as amended, alleges numerous causes of action on behalf of the Mix Class. The Mix Class claims are directed against all defendants and allege (i) causes of action related to the sale of under-filled bags of Carvel Mix: breach of contract, breach of warranty, fraud, negligent misrepresentation, and violations of the consumer protection provisions of New York Business Law (G.B.L.) § 349 and the labeling provisions of G.B.L. § 350;[5] and (ii) causes of action related to the sale of Carvel Mix that did not meet product specifications: breach of contract, fraud, negligent misrepresentation and violations of G.B.L. § 349. The amended complaint also alleges four CT Page 3049 causes of action against Carvel and the three named directors on behalf of the Fund Class that include: breach of fiduciary duty, breach of contract, fraud and a violation of G.B.L. § 349.
 FACTS
The Court has carefully reviewed and considered the various memoranda of law (including all reply memoranda) filed on behalf of the Plaintiffs, Carvel and Tuscan, together with the numerous exhibits and appendices attached thereto. The following observations can be made regarding the under-filling and "out of spec" claims. Carvel Mix is produced by a number of companies pursuant to authority granted by Carvel. Each franchisee purchases Carvel Mix from a supplier, and typically more than one supplier, either directly or through a middle man. The amended complaint alleges that the Carvel Mix bags were systematically under-filled and that the product itself often failed to meet specifications. Additional information from Plaintiffs, including their deposition testimony, sheds further light on these allegations. Each of them purchased Carvel Mix from more than one supplier and tracing under-filled or "out of spec" bags of mix to their sources may be difficult and, perhaps, impossible where obtained through a middleman. One or more of the Plaintiffs indicate that, at times, they noticed problems with mix obtained from other suppliers similar to those alleged against Carvel and Tuscan. As to those bags which were under-filled, whether from Tuscan or otherwise, one or more of the Plaintiffs noted that the level to which the bags were filled varied and there was no apparent systematic under-filling pattern (within a batch, from one batch to the next, etc.). As to the "out of spec" claims, it is clear that many bags of Carvel Mix met product specifications and, as to those which did not (assuming they came from Tuscan), there is no uniformity as to the degree of deviation (with tests showing both de minimus deviations and more than de minimus deviations) or the nature of the deviation, if any (while many of the test samples showed the fat content of the mix to be within the specified range, those tested samples that were out of spec were lower than the range in some instances and higher in other instances, hence having a different effect on the end product).
The claims which Plaintiffs seek to assert on behalf of the Fund Class are rooted in certain payments which each franchisee, pursuant to the franchise agreement, is required to make annually as a contribution toward Carvel's cost of advertising and promotions. Although Plaintiffs contend that Carvel did not expend as much toward advertising as it collected from franchisees (a claim denied by Carvel which alleges that it actually expends far more in advertising than it collects from franchisees), the primary thrust of Plaintiffs' claim is that Carvel used the franchisees' contribution, in part, to advertise the availability of CT Page 3050 Carvel products in supermarkets. Plaintiffs contend that this alleged use of the contributed funds was improper because, rather than supporting the franchisees who provided the funds, the advertising supported the supermarkets which purportedly competed with franchisees in the sale of Carvel products.[6] The Fund Class, as proposed, would not include franchisees who sell ice cream products to supermarkets for resale (presumably on the theory that such franchisees indirectly benefit from Carvel's supermarket advertising). The Plaintiffs provide no indication of how many franchisees do not sell to supermarkets and thus would be part of the proposed class. Franchisees potentially falling within the Fund Class definition are not all similarly situated. Each is located in different proximity to a supermarket, if any, that engages in the sale of Carvel products and, hence, may or may not actually compete with the supermarkets as a source of supply of Carvel products. Moreover, Carvel provides different types of advertising to different franchisees at different levels of expense, such that some franchisees may get more benefit from their advertising program than that which they have contributed while others may receive less.
This is not the only litigation commenced with respect to the under-filling claims. Carvel itself brought an action against Tuscan in which it alleged that Tuscan had under-filled bags of Carvel Mix.[7]
Carvel and Tuscan settled that dispute. Part of the settlement involved the payment of certain funds by Tuscan which Carvel passed along, in whole or in part, to franchisees who executed releases in favor of Carvel. Carvel's solicitation of these releases during the pendency of this litigation was a major source of contention. In all, Carvel obtained releases from 344 current franchises (approximately 90% of all current franchisees). At an earlier stage of these proceedings, Plaintiffs claimed that the releases were improperly solicited and fraudulently obtained by Carvel and an agreement was reached pursuant to which Plaintiffs' counsel wrote to all franchisees setting forth their view regarding the underlying merit of this lawsuit and affording, with Carvel's concurrence, each franchisee who executed a release, the opportunity to rescind the same. Only 3 of the 344 franchisees elected to rescind their releases.
Finally, it should be noted that the franchise agreements provide that New York law shall govern any dispute which may arise between Carvel and franchisees. Tuscan is not a party to the franchise agreements. Hence, while the choice of law provision contained in the franchise agreements will govern disputes between franchisees and Carvel inter se, they are not binding upon Tuscan and, therefore, not determinative of what law would apply to disputes between Tuscan and the various franchisees (who are located in more than a dozen different states).[8]
CT Page 3051
 LEGAL DISCUSSION Legal Prerequisites for Class Certification.
The prerequisites to a class action are set forth in Practice Book § 9-7: (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there must be questions of law and fact common to the class (commonality); (3) the claims or defenses of the representative party must be typical of the claims of the class (typicality); and (4) the representative party must be able to fairly and adequately protect the interests of the class (adequacy). See Practice Book § 9-7; Arduini v. Automobile Ins. Co. of Hartford,23 Conn. App. 585, 588-89, 583 A.2d 152 (1990). Pursuant to Practice Book § 9-8, the party moving for class certification must satisfy two additional conditions: (1) that questions of law or fact common to members of the class predominate over any questions affecting only individual members (predominance) and (2) that the proposed class action is superior to other available methods for the fair and efficient adjudication of the controversy (superiority). See Practice Book §9-8; Arduini v. Automobile Ins. Co. of Hartford, supra, at 589. "Because rule 23 of the Federal Rules of Civil Procedure is substantially similar to Practice Book §§ 87 and 88 [now §§ 9-7 and 9-8], the federal case law may be used to aid our construction of these rules of practice."Marr v. WMX Technologies, Inc., 244 Conn. 676. 680-81, 711 A.2d 700
(1998); see Arduini v. Automobile Ins. Co. of Hartford, supra, at 589.
"When the propriety of a class action is considered, the question is only whether the requirements set forth in the rules have been met and not whether the moving party has stated a cause of action or will prevail in the end." Walsh v. National Safety Associates, Inc., 44 Conn. Sup. 569,580, 695 A.2d 1095 (1996), aff'd, 241 Conn. 278, 694 A.2d 795 (1997); seeMarr v. WMX Technologies, Inc., supra, at 681. It is well established that the Plaintiffs bear the heavy burden of establishing that each requirement for class certification is met, and the failure to meet any one of the prerequisites of the rules of practice requires a denial of class certification. See Arduini v. Automobile Ins. Co. of Hartford,
supra, at 591. "Although the determination of whether a class action is appropriate is a matter for the trial court's discretion . . . the requirements of the rule are to be given a liberal construction." (Citation omitted.) Campbell v. New Milford Board of Education,36 Conn. Sup. 357, 360, 423 A.2d 900 (1980).
Thus, the issue before the Court is whether the Plaintiffs satisfy the prerequisites for class certification set forth in Practice Book §§ 9-7
and 9-8. The Court finds that the Plaintiffs have failed to sustain their burden of establishing several of the prerequisites, as hereinafter set CT Page 3052 forth.[9]
 Adequacy
"Adequacy . . . is measured by two standards. First, the attorney for the class must be qualified, experienced and generally able to conduct the litigation.[10] Second, the class members must not have interests that are antagonistic to one another." (Internal quotation marks omitted.) Walsh v. National Safety Associates, Inc., supra, at 586. "This requirement is the most important because it involves due process considerations. Since the absent class members will be conclusively bound by the judgment, the Court must ensure that their interests are adequately represented. . . . This requires the representative to have so substantial a stake in the outcome of the litigation that he assures the Court that he will put up a real fight." (Citations omitted; internal quotation marks omitted.) Campbell v. New Milford Board of Education,
supra, at 366-67. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (Internal quotation marks omitted.) Amchem Products, Inc. v.Windsor, 521 U.S. 591, 625-26, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); see also Campbell v. New Milford Board Of Education, supra, at 367. "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." Sonsav. Iowa, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); see alsoFetterman v. University of Connecticut, 41 Conn. Sup. 141, 143,559 A.2d 246 (1988) (quoting same); Caserta v. Parker, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 363275 (February 28, 2000, Skolnick, J.) (same); Maltaghati v. Wilson, Superior Court, judicial district of Hartford, Docket No. 575612 (October 7, 1999,Mulcahy, J.) (same).
The Court finds that the Plaintiffs are not adequate class representatives. The Plaintiffs are former Carvel franchisees. They seek to represent current Carvel franchisees, a constituency to which they no longer belong. In significant respects, the interests of current franchisees and former franchisees are not aligned; see Amchem Products,Inc. v. Windsor, supra, at 626-27; thereby creating "interests that are antagonistic to one another." (Internal quotation marks omitted.) Walshv. National Safety Associates, Inc., supra, at 586. Specifically, as former franchisees, Plaintiffs have no interest in the continued success of Carvel. Indeed, far from having an interest in Carvel's continued success, at least one of the Plaintiffs has continued to engage in the retail sale of ice cream products under a different name and, therefore, actually competes with Carvel. Current franchisees, however, have a significant interest in Carvel's continued success and an interest in maintaining positive future business relations with the defendants. SeeCT Page 3053Southern Snack Foods, Inc. v. JJ Snack Foods Corporation,79 F.R.D. 678,680 (D.N.J. 1978). This disparity of goals between these groups could seriously impact this litigation at various stages, such as settlement negotiations. As a general rule, courts are not inclined to find former franchisees to be adequate representatives of current franchisees. Southern Snack Foods, Inc., supra, at 681; Auto Ventures,Inc. v. Moran, 1997 WL 306895 (S.D.Fla. 1997). "It is axiomatic that no party can fairly or adequately represent the interests of the absent class if he is also motivated by interests adverse to the class as a whole."McQuillan v. Engelman, Superior Court, judicial district of Waterbury, Docket No. 153482 (February 10, 2000, McWeeny, J.). Id. Whereas current franchisees necessarily view Carvel as an ally in the sense that they share, in many respects, a common economic interest, Plaintiffs clearly view Carvel as the enemy. This difference in perspective undermines Plaintiffs' ability to serve in a representative capacity.
The Court is not persuaded by the Plaintiffs' argument that finding former franchisees to be inadequate representatives of current franchisees creates strong and perverse incentives for franchisors to terminate all franchisees who attempt to serve as class representatives. First, it should be noted that Plaintiffs' claim that their respective franchises were terminated mischaracterizes Carvel's actions: Franchise agreements run for a term of years, at the conclusion of which either party has the option of not renewing the franchise relationship. In the case of each named Plaintiff, Carvel elected not to renew the franchise. Moreover, if a franchisor were to terminate (rather than non-renew) all franchisees who attempted to serve as class representatives, it might well subject itself to potentially significant liability in doing so. Finally, the franchise structure is wholly dependent upon franchisees. Franchisors, as a matter of economic self-interest, cannot afford to terminate franchisees as cavalierly as Plaintiffs suggest.
The Court finds the cases cited by Plaintiffs to be distinguishable or unpersuasive. In Collins v. Int'l Dairy Queen, Inc., 174 F.R.D 511
(M.D.Ga. 1997), the proposed representatives were current franchisees seeking to represent a class which included former franchisees. Likewise, in both Bogosian v. Gulf Oil Corp., 561 F.2d 434,440 (3rd Cir. 1977) and Rental Car of N.H., Inc. v. WestinghouseElec. Corp., 496 F. Sup. 373, 383-84 (D.Mass. 1980), the named plaintiffs included current franchisees who purported to represent former franchisees. The factor which distinguishes the two groups — the risk to the ongoing relationship between franchisor and franchisee — did not present itself in those cases because the parties most likely to be affected (current franchisees) had initiated the action. That is not the, case here. The Court likewise finds inappropriate those cases in which a former employee seeks to CT Page 3054 represent a class which includes current employees. See for example,Canzolini v. United Aircraft Corp., Sikorsky Aircraft Division (Judicial District of Ansonia-Milford, Docket No. 048696) (March 3, 1998; Corradino, J.). Although current employees belonging to the proposed class would have a continuing relationship with the defendant employer, the employer-employee relationship (particularly in the case of an employer with a large workforce) bears none of the characteristics which so clearly differentiate the franchisor-franchisee relationship (such as the essential ongoing communication and cooperation between franchisor and franchisee, their shared goals regarding the success of the product, and the mutual dependence of each on the other for the overall success of the franchise arrangement). Hence, in Westman v. Textron, Inc.,151 F.R.D. 229 (D.Conn. 1993), involving claimed retirement benefits, the Court found no conflict since the named plaintiffs (former employees) and proposed class members (current employees) "share[d] the same interest in receiving greater benefits. . . ." Id. at 231.
 Commonality and Predominance
The Plaintiffs argue that members of the Mix Class share numerous questions of law and fact, notable among which are the common issues of (i) whether the Carvel Mix bags were systematically under-filled, and (ii) whether the Carvel Mix failed to meet product specifications causing damage to franchisees who paid for Carvel Mix that was "out of spec." The Plaintiffs argue that the claims of the Fund Class turn on the common issues of (i) whether Carvel and its directors used the advertising funds in an impermissible manner, and (ii) whether Carvel and its directors violated fiduciary duties with respect to the advertising fund.
"The requirement of commonality does not require a complete identity of legal and factual issues among all class members. . . . It only requires that some common questions exist, not that they predominate. . . . Thus, the mere fact that there may be factual differences is not fatal to class certification . . . so that where the question of basic liability can be readily established by common issues the case is appropriate for a class action." (Citations omitted; emphasis in original.) Campbell v. NewMilford Board of Education, supra, at 362. "[Clommonality is satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." (Citations omitted; internal quotation marks omitted.) Marr v. WMX Technologies, Inc., supra, at 682.
The Plaintiffs have identified common issues with respect to the Mix Class and the Fund Class. The Court need not determine whether the issues identified are sufficient to satisfy the "commonality" requirement because the common issues, sufficient or not, do not predominate over CT Page 3055 questions affecting individual members as required by § 9-8 of the Practice Book.
"Predominance is a stricter test than . . . commonality. It requires not only that questions common to the class exist but also that they predominate over issues that would relate to only individual members. . . . When common questions represent a significant aspect of a case so that they can be resolved for all class members in a single suit, predominance exists." (Citations omitted.) Walsh v.National Safety Associates, Inc., supra, at 588-89. "The key to the requirement, however, is that the common issues predominate,
not that they be dispositive of the action. . . . Thus, predominance does not require a complete unanimity of common questions as to all class members. (Citations omitted; emphasis in original; internal quotation marks omitted.) Campbell v. New MilfordBoard of Education, supra, at 368-69. "If, however, liability to each class member has to proceed on an individualized basis, such an inquiry destroys the usefulness of the class device." Longley v. Indian MountainSchool, Inc., Superior Court, judicial district of Litchfield, Docket No. 063378 (July 25, 1994, Pickett, J.); see also Maltagliati v. Wilson,
supra, Superior Court, Docket No. 575612 (holding that questions common to putative class did not predominate where proof of liability involved a series of individualized factual determinations).
The Court finds that a resolution of this litigation will require a number of inquiries unique to each individual franchisee. A resolution of the under-filling and "out of spec" claims will involve a threshold determination, as to each franchisee, of the source of the Carvel Mix (Tuscan or another supplier), as well as such individualized inquiries as the nature and extent of any deviation in the volume and content of the delivered product, and the nature and adequacy of any notice given by each franchisee of their respective under-filling and/or "out of spec" complaints. As to Carvel specifically, an overarching individualized inquiry will be necessary with respect to each franchisee who executed a release, the circumstances under which the release was executed and the franchisee's willingness and ability to restore to Carvel any consideration which it received upon execution of the release.[11]
All of the above individualized inquiries, other than the question of the releases executed in favor of Carvel, will necessarily be relevant to a determination of Tuscan's liability. The fact that Tuscan is not a party to the franchise agreements and, therefore, neither subject to nor bound by the choice of law provision (New York) contained therein, may well entail the application of different law (depending on the location of the franchisee) and thus require further individualized inquiries to make a proper determination of Tuscan's liability, if any, to any CT Page 3056 franchisee.[12] Hence, state law variations on such fundamental issues as privity and notice of breach on Plaintiffs' contract claims and applicable statutes of limitations on all of Plaintiffs' claims will require individualized inquiry into the circumstances of each franchisee's claim. The nature and extent of such individualized inquiries, together with those noted earlier, undermine the claim that common issues amongst franchisees will predominate in the litigation of the under-filling and "out of spec" claims.
The Court further finds, with respect to the Fund Class (involving claims brought only against Carvel and its directors), that questions of law and fact common to the proposed class members do not predominate over questions affecting individual class members. Even were the Court to assume, as it does, that the franchisees' contractually required contributions to Carvel advertising should not have been utilized to any extent to support the sale of Carvel products in supermarkets,[13]
there are many inquiries unique to each franchisee which militate against a finding that common questions of law in fact predominate. Carvel does not provide identical advertising for each franchisee. Rather, Carvel provides different types of advertising campaigns (television, newspaper, signage, etc.) to different franchisees in different areas at different costs. Therefore, assuming that Plaintiffs' basic intentions are otherwise well-founded, some franchisees may arguably have cause for complaint while others may not. The differences which separate franchisees in these respects are compounded by the further inquiry whether a given franchisee is located near a supermarket which carries Carvel products and is otherwise supported by Carvel-sponsored advertising. Again, franchisees who receive significant advertising support from Carvel and do not compete with a supermarket which carries Carvel products are in a decidedly different posture from franchisees, if any, who receive less advertising support from Carvel and do compete with supermarkets which receive such support.[14]
 Superiority
Plaintiffs argue that the four factors highlighted in the commentary to Practice Book § 9-8 strongly support the conclusion that class resolution of these claims is the superior method for adjudicating the claims of all members of the classes. The defendants rely on these same factors in support of their contention that a class action is not the superior method for adjudicating these claims.
The commentary to Practice Book § 9-8 states in relevant part: "Federal Rule 23(b)(3) discusses four matters pertinent to finding compliance with the requirements analogous to P.B. § 9-8. They are as follows: (A) the interest of the members of the class in individually CT Page 3057 controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action."
"[I]f the disputes which the Plaintiff representative seeks to have litigated in a class action could be adjudicated more efficiently and effectively in another forum or in another manner — such as individual suits, joinder of parties, administrative remedies or test case litigation — then class certification should be denied. (Internal quotation marks omitted.) Crowley v. Banking Center, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 237599 (March 6, 1992, Katz, J.) (6 Conn. L. Rptr. 134); see also Campbell v.New Milford Board of Education, supra, at 369-70.
After due consideration of the four factors discussed in the Author's Comments to Practice Book § 9-8, this Court concludes that a class action is not the. superior method for adjudicating these claims. Specifically, "when so much in the way of individual proof by each of the class members will be required"; (internal quotation marks omitted)Caserta v. Parker, supra; the many difficulties likely to be encountered in the management of the class action would not "further judicial economy purposes." Parker v. Richardson Merrell Co., supra. Moreover, the fact that so many members of the proposed class have released their claims against Carvel and, when given the unfettered opportunity to rescind their releases have chosen not to do so, clearly indicates a lack of support for this litigation and may well suggest that a large percentage of potential class members are interested in individually controlling any claims they may have. Furthermore, without assessing the merits of the pending litigation, the Court notes that the Finkles and McNerney, the proposed representatives of the Fund Class, along with a number of other purported class members are already involved in advertising-related litigation in federal court with Carvel. See Arduini v. Automobile Ins.Co. of Hartford, supra at 591 n. 4 (holding that a class action would not be the most efficient method of adjudicating this controversy because a number of class members were already engaged in litigation). Finally, the Plaintiffs offer in their reply memorandum to voluntarily streamline this litigation by serving as class representatives only for the breach of contract, breach of warranty and fraud claims of franchisees who live in New York, New Jersey, Connecticut, Florida and Pennsylvania in order to simplify the choice of law issues present. This offer itself is indicative of the many multiple difficulties that are likely to be encountered in the management of a class action and lend further support to the Court's conclusion that "the claims could be adjudicated more CT Page 3058 efficiently and effectively in another forum or in another manner. . . ."Crowley v. Banking Center, supra.[15] The Court does not believe that the carving back of the claims and the class eliminates the anticipated difficulty of managing class litigation in this case. Accordingly the Court concludes that the Plaintiffs fail to satisfy the superiority prerequisite.
 CONCLUSION
For the foregoing reasons, the Court finds that the Plaintiffs have failed to satisfy the adequacy, predominance and superiority prerequisites for class certification pursuant to Practice Book §§ 9-7
and 9-8. Accordingly, Plaintiffs' motion for class certification is denied.
Dated this 23rd day of February, 2001.
Solomon, J.